## Smith Sandford v. Richard T. Flint and others.

*Equity : Relief against forfeiture.* Relief in equity against forfeiture is founded upon the principle that the possessor of a legal right shall not be allowed to use it to work oppression or injustice; and when a mortgagor, not guilty of laches, brings himself within this principle, and it can be applied without injustice to others, it is the duty of the court to administer the proper relief.

*Mortgage : Executing power of sale : Relief against statutory foreclosure.* A mortgagee will not be allowed so to execute the power of sale contained in his mortgage as to compel the mortgagor to pay more than he owes or forfeit his estate ; and if it is attempted either through mistake or fraud, a court of equity, if appealed to in season and in a proper manner, will prevent the forfeiture by allowing the party to pay the true sum in redemption of the estate.

SANDFORD v. FLINT.

*Equity pleading : Mortgage : Bill to redeem.* In a bill by a mortgagor for relief against a statutory foreclosure for a sum larger than was due upon the mortgage, an offer to redeem is not an indispensable requisite in a case where there is no reason to believe the defendant has been misled, and the case shows that the parties have gone into the merits fully as upon a bill to redeem.

*Heard October 25 and 26. Decided October 31.*

Appeal in Chancery from Barry Circuit.

The bill in this case was filed by Smith Sandford in the circuit court for the county of Barry, in chancery, against Richard T. Flint, Mary J. Griffin, and William H. Jewell, register of deeds for Barry county, for relief against a statutory foreclosure of a mortgage executed by the complainant to the defendant Flint, and by Flint assigned to the defendant Griffin, by whom the mortgage was foreclosed. The cause was heard upon pleadings and proofs, upon which a decree was rendered in favor of the complainant, from which the defendants appeal to this court.

*D. Darwin Hughes,* for complainant.

*George C. Worth,* and *J. R. Van Velsor,* for defendants.

GRAVES, J.

The leading facts in this case appear to be as follows: On the 8th of January, 1867, the complainant was indebted to defendant, Flint, in the sum of one thousand four hundred dollars, and in order to secure the payment thereof, gave to Flint his promissory note for the amount, payable to Flint or bearer, on the first day of May, 1867, with interest at ten per centum per annum, and at the same time executed and delivered to Flint a mortgage on real estate, providing for the payment of the same debt in the manner mentioned in the note.

On the 28th of June, 1867, Flint, formally and in writing, assigned the note and mortgage to his daughter, the defendant, Griffin, and which, as Flint and Mrs. Griffin claim, was merely in execution of an agreement to assign,

made on the 2d of the preceding April, when, as they also claim, the note was actually sold and delivered by Flint, to Mrs. Griffin. At neither of these times was there any writing upon the note or mortgage indicating that any thing had been paid. Neither the note nor mortgage appears in the record, but it seems to be admitted that the mortgage contained the usual power of sale.

On the 10th of June, 1868, the mortgaged premises were sold under foreclosure proceedings at law, carried on in the name of the assignee, Mrs. Griffin, for the whole face of the mortgage including interest and costs, being one thousand five hundred and sixty-two dollars and sixty-eight cents. Mrs. Griffin became the purchaser, and the deed was made to her, and deposited with the register of deeds. No objection has been raised to the form of any of the proceedings to foreclose.

Some time after the mortgage was made, but before the sale (the precise time not being clearly ascertained by the proofs), a course of dealing commenced between Flint and Sandford, which was found by an accounting between them on the 26th of September, 1868, to have resulted, as they agreed, in making Flint a debtor to Sandford in the sum of two hundred and twenty-eight dollars, of which one hundred and fifty-three dollars had accrued before the assignment. When this accounting occurred, complainant had learned of the assignment to Mrs. Griffin, and it was then arranged that Flint should obtain his daughter's sanction to the appropriation of the amount on the mortgage debt, and on Flint's application she executed a paper and sent it to Sandford, by which she applied the two hundred and twenty-eight dollars on that debt. About this time, Sandford, as he claims, discovered an error in the accounting which showed that the sum of two hundred and twenty-eight dollars was too small by twenty dollars, and thereupon Flint

gave him his note for that sum. It also appears that other small transactions occurred between Flint and Sandford shortly after this, which produced another balance in Sandford's favor of sixty-three dollars and eighty-four cents.

On the 24th of August, 1868, Flint purchased a billiard table of one Parish, for two hundred and forty dollars, and with one Leonard gave his note to Parish therefor, payable to the latter or bearer, in ninety days, with interest at ten per cent. It further appears that some time from fifteen to thirty days after the date of this note, it was acquired by Sandford. It is claimed by Sandford that during all these dealings after the assignment of the note and mortgage to Mrs. Griffin, Flint continually represented that the assignment was a mere matter of convenience, and colorable only; that he still owned the securities and the rights under them, and exercised complete control; that the amounts complainant had against him arising from their dealing should apply on the mortgage demand; and further, that Flint assured him that if he would obtain the Parish note it should be applied on such demand. He also insists that he trusted to these representations, and was thereby brought to give Flint credit and trust him on account, and to buy the Parish note.

As the end of the year for redemption approached, the complainant called on the defendant Griffin at her house, in order to get her sanction to the application of these various demands on the mortgage debt, and on the 10th of June, 1868, the last day for redeeming pursuant to the statute, another interview occurred in relation to the same subject.

An understanding, however, was not reached on either occasion. The complainant insisted that all of the foregoing demands should be applied, and he offered her one thou-

sand two hundred and twenty dollars in cash, as the balance after deducting his claims.

This sum seems to have been ascertained as that which would remain after deducting the claims, by the register of deeds, Mr. Jewell, who made the computations. Mrs. Griffin consented to allow all the claims except the Parish note, and that she positively refused to admit. Upon this refusal the complainant tendered the claims, including the Parish note and one thousand two hundred and twenty dollars in cash, to satisfy the debt and redeem the estate, to the register of deeds, but that officer declined to accept them.

Thereupon, and on the same day the present bill was filed. The court below decreed that the assignment to Mrs. Griffin was fraudulent and void as against complainant; declared that the claims before specified were applicable, and should be applied on the mortgage debt; that the money tendered with these claims was sufficient to pay the debt and redeem the premises, and ordered redemption accordingly.

An examination of the record makes it evident that the case was not one for redemption in the register's office pursuant to the statute, since the circumstances required an accord by the parties. And it is equally manifest that an earnest effort was made to produce a redemption through such an accord, and that the only obstacle thereto was the Parish note.

The attempt did not fail by reason of any unwillingness of Mrs. Griffin to accept and treat as payment any demands against Flint, but it fell through because she would not admit a particular one of several such demands. The parties having thus failed to come to an understanding, can this court intervene to prevent a loss or sacrifice by either?

Relief against forfeitures is a very ancient head of equity,

and it is founded upon the broad and benign principle, that the possessor of a legal right shall not be allowed to use it to work oppression or injustice. Many have supposed that the remedy for redemption was originally a shoot from the same root, and whether this is so or not, it is certain that it is mainly invigorated from the same source. If the complainant has brought himself within the influence of this equity, if he has stated and proved a case which entitles him on the principle suggested to save the mortgaged estate without injustice to others, then it becomes the duty of the court to administer the proper relief. There is in this case, no question of laches. The complainant has not acquiesced in any act so as to call upon the court to close its doors against him. We are not embarrassed by any questions springing from the legal or equitable rights or interests of third persons or strangers. The persons to be affected are the immediate parties and actors. The case then stands clear of all extrinsic or impinging equities. In the execution of these powers of sale, the statute contemplates, and equity requires, the observance of good faith, and a proper regard for the interests of all who may be affected by the proceedings ; and nothing can be plainer than that the party intrusted with the power may not enlarge his demand by his own act in executing the power, and compel the debtor either to pay more than he owes, or forfeit his estate ; and it is equally plain, that if such a thing is attempted, either by mistake or through fraud, a court of equity, if appealed to in season and in a proper manner, will prevent the forfeiture by allowing the party to pay the true sum in redemption of the estate; and it is upon this principle, that complainant may be permitted to rest his case. The bill before us has been criticised, and counsel have argued that it does not make a case for redemption. It is said that it contains no offer to redeem, and that in

its general framework, and in the prayer for relief, it proceeds upon a different theory altogether.

It is quite true that the bill in not entirely congruous, and that it is not neatly shaped as one for redemption merely; but I think it contains, after all, the substance of a bill of that kind. It seems to have been considered in the court below as possessing that character, and there is no reason to believe that defendants have been surprised or misled. The parties seem to have gone fully into the merits as upon a bill to redeem, and the complainant ought not now to be turned round upon matters of form. An offer to redeem is not an indispensable requisite, and its omission will not necessarily disarm the court or undermine the remedy. At most it will, in general, affect the question of costs only, and these the court will be inclined to inflict where it appears likely that an offer and readiness to redeem upon grounds found to be reasonable, would have been followed by the submission of defendant.

Pursuing the view of the case so far taken, it is next to be seen whether Mrs. Griffin, in executing the power of sale, by mistake or otherwise, not only sold for more than was due, but for an amount so much larger that the law will notice the excess.

It appears, from the evidence of complainant and defendant Flint, that the latter was indebted to the former on account, in the sum of one hundred and fifty-three dollars, at the time of the assignment of the mortgage, and this is not denied by Mrs. Griffin. Flint further testifies that the reason why it was not indorsed on the mortgage before assignment was that it was not made out; and the evidence conduces to show, and I think establishes, that it was understood between Flint and complainant, as this indebtedness arose, that it should be in payment of the mortgage debt so far as it would go. Neither Mrs. Griffin nor Flint

deny in their evidence that she knew of this indebtedness and this understanding at the time of the assignment, and silence on this point is the more noticeable as Flint takes pains to deny that she had notice of the existence of two other accounts which arose between him and Sandford.

She subsequently agreed that this one hundred and fifty-three dollars, with another sum which raised it to two hundred and twenty-eight dollars, should be taken as payment, and she afterwards expressly told Sandford, as she swears, that this sum of two hundred and twenty-eight dollars should be allowed and deducted. She also testified that after the sale she knew from information that a sum had been paid which had not been indorsed and taken out, but she does not intimate that she had no notice of such payment when the mortgage was assigned. These facts, in connection with her readiness to allow this demand, the relations of trust and confidence between her and her father, and the manner in which they seem to have dealt with each other in this and other matters induced the opinion that she was informed, at the time of the assignment, of the condition of things between Sandford and her father, and of the circumstance that this account was, in substance, a payment on the mortgage. Entertaining this view of the facts, the consequence follows that Mrs. Griffin foreclosed for the whole face of the mortgage, by mistake or otherwise, when to her knowledge, acquired before, or at, the assignment there had been paid at least one hundred and fifty-three dollars. The complainant, then, had the right to redeem for a sum considerably less than the register was at liberty to accept, and a regular redemption at law was made impracticable except upon payment of more than was equitably due. Nothing remained but a redemption by negotiation or in equity. The negotiation was attempted and failed. The ground of equitable relief remained. The foreclosure

24 MICH.—5.

still stood apparently legal, but was for too large a sum. This is decisive of complainant's right to redeem in equity, and the remaining inquiry relates to the terms.

Upon this subject there is no room for discussion, except in regard to the note for two hundred and forty dollars. The other demands were admitted to be justly applicable. To this extent, the parties in substance adjudicated for themselves, and no reason is perceived for any wide departure from their decision so far as they agreed. The Parish note of two hundred and forty dollars was the only subject of difference, and the question is, whether the complainant has made out a case for the application of that demand. This note was made more than two months after the foreclosure sale, and did not fall due until more than five months after such sale, and about a year and a half after the assignment to Mrs. Griffin. The evidence does not satisfactorily show that complainant purchased it upon any prior understanding with Flint that if purchased it should apply, and no consideration is shown for any agreement by Flint that it should be applied on the mortgage debt.

On the other hand there is some evidence that it was not considered by Sandford as obtained to be so used, or as devoted by any agreement or arrangement to such a purpose, or as appropriated to the mortgage debt; for it distinctly appears that he at one time actually transferred it as collateral security upon another debt, and that on such transfer it passed into the hands of Mr. Foster of Grand Rapids.

There are also some signs in the record that the billiard table for which this note was given was afterwards taken upon a mortgage which accompanied the note, and was made to cancel something of the debt. There is no ground for claiming that this note in the hands of Sandford afforded an equitable set-off against the mortgage debt.

SANDFORD v. FLINT.

Under these circumstances, I think the complainant has failed to show that the note was so obtained and held, as to be payment upon the mortgage and serve to reduce the sum to be paid on redemption; and this, too, whether the mortgage debt is considered in equity as belonging to Flint or to Mrs. Griffin.

Upon the whole case I conclude that the decree below is wrong and should be reversed; but that complainant is entitled to redeem on paying in money, in a reasonable time to be specified in the decree, the balance of principal and interest remaining upon the mortgage exclusive of the costs of foreclosure, and deducting the demands held by complainant and hereinbefore specified, excepting the Parish note for two hundred and forty dollars; that in applying the demands, the claim of two hundred and twenty-eight dollars should be taken as paid on the mortgage on the 26th of September, 1868; the twenty-dollar note on the 2d of October, 1868; the account for goods of sixty-three dollars and eighty-four cents on May 1, 1869; and that the interest on the mortgage should be calculated as though said several amounts had been paid in money and indorsed at those times respectively. It is presumed that the proper balance can be readily ascertained and inserted in the decree. Of course the complainant will be at liberty to withdraw the deposit made with the register if that has not been done already. Upon payment of the money, the defendant Griffin, will be entitled to the vouchers representing the demands allowed as payments, and in case the money is not paid at the time, the bill should stand dismissed. In any event the complainant should be required to pay the costs of both courts.

The other Justices concurred.