[No. 13565. In Bank. — August 1, 1890.]

THOMAS R. MORE, ADMINISTRATOR, ETC., APPELLANT,
v. J. W. CALKINS, RESPONDENT.

DEED OF TRUST — POWER OF SALE — MORTGAGE — DISPUTE AS TO AMOUNT
OF INDEBTEDNESS — ACCOUNTING — INJUNCTION — PLEADING. — A com-
plaint setting out an instrument purporting to be a conveyance upon
certain trusts, and empowering the defendant to sell the lands conveyed,
and to pay certain indebtedness of plaintiff to defendant and certain
advances to be made by him, and an additional sum of ten thousand
dollars, and alleging that defendant has advertised the property for sale,
and showing that a considerable portion of the demand of defendant is
unliquidated and uncertain, and that said sum of ten thousand dollars
is disputed as being without consideration, and that the value of the
property greatly exceeds the amount of the just and lawful indebted-
ness of plaintiff to defendant, — states a cause of action for an accounting
before a sale of the property, and for a temporary injunction against the
sale pending the accounting, regardless of whether the instrument is
merely a mortgage with a power of sale, or a deed of trust conveying
the legal title.

ID. — SALE UNDER ORDER OF COURT — MODE OF SALE — COMMISSIONER. —
In such case, the court is not only justified in ordering an account of
what is due the defendant, but may also control the mode of sale as to
the notice to be given, the limitation of the amount, and portions of the
property to be sold, and whether or not it should be sold in parcels, and
may order the sale to be made by its own commissioner, if deemed neces-
sary to secure a fair sale for the highest price.

ID. — PLEADING — VALIDITY OF CONTRACT — MENTAL INCAPACITY — TOTAL
WANT OF UNDERSTANDING. — A complaint alleging that such deed of
trust was void upon the ground that the grantor was incapacitated from
giving his consent to the contract by physical and mental disease, not
having proper control of himself and capacity to act in a reasonable
and proper manner, and being still further incapacitated by inebriety,
whereby he was at the date of the instrument non compos mentis, does
not show that the contract was void under section 38 of the Civil Code,
it not being directly or indirectly, definitely or indefinitely, alleged that
the grantor was "entirely without understanding."

ID. — RESCISSION OF CONTRACT FOR UNSOUND MIND — OFFER TO RESTORE.
— Conceding that such complaint shows such an "unsound mind,"
though "not entirely without understanding," as would justify a rescis-
sion of the deed of trust, under section 39 of the Civil Code, and the
chapter on rescission therein referred to, yet if it does not state any
offer to restore the money paid under the contract, or that plaintiff is
ready or willing to restore anything of value received from defendant
under the contract, it states no cause of action for rescission.

APPEAL from a judgment of the Superior Court of Ventura County.

The facts are stated in the opinion.

*Barclay, Wilson & Carpenter,* and *McKeeby & Wilde,* for Appellant.

*Wright & Day,* for Respondent.

VANCLIEF, C.—This appeal is from a final judgment for defendant on general demurrer to the complaint, and the questions for decision relate to the sufficiency of the complaint as against a general demurrer.

A. S. More, having commenced the action in his lifetime, died pending a demurrer to his complaint. After substitution of his administrator, Thomas R. More, as plaintiff, the demurrer was sustained, and the administrator filed an amended complaint, a general demurrer to which was also sustained; and it is the sufficiency of this amended complaint which is in question here.

After averring the death of the original plaintiff and the substitution of the administrator, the amended complaint proceeds as follows:—

"2. That heretofore, to wit, on the seventh day of April, 1888, Alexander S. More, deceased, was the owner in fee-simple and in the possession of several tracts of land lying and being in the county of Ventura, and state of California, and particularly described in an instrument executed between the original plaintiff in this action and defendant on the day and year aforesaid, and acknowledged by the said Alexander S. More, deceased, on the day and year aforesaid, and by the said defendant on the ninth day of April, 1888, and recorded in the recorder's office of Ventura County, state of California, on the day and year last aforesaid, at ten minutes past eleven o'clock, A. M., of said day, a copy of which said instrument in writing, marked 'Exhibit A,' is here annexed and made a part of this complaint.

"3. That said instrument, made as aforesaid, acknowledged and recorded as aforesaid, was upon its face a deed by which the said Alexander S. More conveyed the title to the said several tracts of land to the defendant, upon certain conditions and trusts therein set forth, but that the same was then and is now, in law and equity, a mortgage to secure the payment from the said Alexander S. More to the defendant of the sum of fifteen thousand dollars, by the defendant, on the said seventh day of April, A. D. 1888, loaned to the said Alexander S. More, with interest thereon at the rate of ten per cent per annum from date of deed, and for the repayment to the defendant of the sum of about forty-three thousand dollars, principal and interest, the amount of a mortgage held by Isadore Dreyfus, and due November 5, 1888, which said mortgage the said defendant, in the said instrument in writing, agreed to assume and pay, and to secure the said defendant the repayment of all taxes which should at any time be paid by him on the said several tracts of land so conveyed by the said Alexander S. More to the defendant, said taxes and the amount paid upon said mortgage to bear interest at the rate of ten per cent per annum, and for the payment by the said Alexander S. More to the defendant of all costs and expenses incurred by the defendant in and about the management and sale of the said several tracts of land aforesaid, and for no other purpose whatever; that on the fifth day of November, A. D. 1888, the defendant did pay to the said Isadore Dreyfus about the sum of forty-three thousand dollars, principal and interest, on the said mortgage held and owned by Dreyfus as aforesaid, and from the said fifth day of November, A. D. 1888, the said defendant became and was entitled to have and receive of and from the said Alexander S. More the sum of forty-three thousand dollars, with interest thereon at the rate of ten per cent per annum until paid.

"Plaintiff alleges, upon his information and belief, that

the whole amount of indebtedness of the said Alexander S. More to defendant, exclusive of taxes paid by the defendant for the said Alexander S. More, and the expenses of the management of the several tracts of land aforesaid, is fifty-eight thousand dollars, with interest thereon at the rate of ten per cent per annum on fifteen thousand dollars from the seventh day of April, A. D. 1888, and on forty-three thousand dollars from the fifth day of November, A. D. 1888, and that for said sum of fifty-eight thousand dollars and interest, and taxes paid and interest, the amount of which is unknown to the plaintiff, and the expenses incurred in the management of the several tracts of land (the amounts of which are also to the plaintiff unknown) the defendant has a lien upon. But plaintiff denies that the defendant has a lien upon or title to the several tracts of land aforesaid.

"4. The plaintiff further states that by the terms of said instrument in writing between the said Alexander S. More, deceased, and the defendant, of date April 7, 1888, it was provided that the said Alexander S. More should pay to the defendant the additional sum of ten thousand dollars, which the party of the first part hereby agreed to pay to the party of the second part without interest; and the plaintiff alleges, on his information and belief, that there was not, prior to the execution of said instrument, at the time, or since then, the slightest consideration for that part of the agreement; that he has never received from the defendant or any other person a single farthing as a consideration for that portion of the agreement, and the only consideration for that specific portion of said agreement was as follows: The said Isadore Dreyfus had an option in writing, dated the fifth day of November, A. D. 1887, to purchase the said several tracts of land within one year from the date of said option, for the sum of one hundred and three thousand dollars, and the defendant was to have and receive from the said Alexander S. More the said sum of ten thousand

dollars in case said Isadore Dreyfus should not elect to
buy said several tracts of land, and he, the defendant,
should find a purchaser or purchasers for the same at
the same price Isadore Dreyfus held the option for, viz.,
one hundred and three thousand dollars; and the plain-
tiff alleges that said Isadore Dreyfus did not elect to pur-
chase said several tracts of land at and for the price
aforesaid, and that the defendant has not sold the said
several tracts of land, or any portion of them, and is not,
in law or equity, entitled to receive the said sum of ten
thousand dollars, or any part thereof.

"5. The plaintiff further states, upon his information
and belief, that appurtenant to said tracts of land are
certain valuable water rights, viz., the Sespe Creek, Fish
Slough, and the Hojo or Dudley Cañon; and that the
several tracts of land and water rights appurtenant to as
aforesaid are very valuable, being of far greater value
than the amounts due the defendant, and that the de-
fendant can suffer no loss or injury if the sale of the
said several tracts of land is delayed, while the estate of
said Alexander S. More would suffer irreparable injury
if the sale heretofore advertised should take place, as
said estate would be without remedy at law if the de-
fendant were permitted to sell the same.

"And the plaintiff further alleges that the defendant
has been in possession of the said several tracts of land
and water rights since the execution of said instrument;
has rented the same to several parties, who have paid
said defendant rent for the same, or are now indebted
to him for rent of said several tracts of land and the
water rights aforesaid, and that said defendant has ren-
dered no account of said rents to the estate of Alexander
S. More, or given plaintiff any information concerning
the same, and that plaintiff is in ignorance of the
amounts of said rents and profits.

"6. The plaintiff further alleges that, disregarding
the plaintiff's rights in the premises, the defendant has

advertised said several tracts of land and the water rights appurtenant thereto to be sold at Santa Paula, in the said county of Ventura, state aforesaid, at public auction, for cash, on the tenth day of April, and that said amount of ten thousand dollars, so wrongfully and illegally inserted in said instrument in writing as being a debt of the plaintiff due to the defendant, is demanded, and the defendant is about to sell the said several tracts of land and the water rights appurtenant thereto to satisfy that said sum of money last aforesaid, as well as the others named in said instrument.

" 7. And for a further cause of action, the said plaintiff alleges that at and prior to the date of the execution and delivery of the instrument of writing theretofore referred to, copy of which is hereto annexed and marked 'Exhibit A,' as this plaintiff is informed and believes, the said Alexander S. More was incapable of executing said alleged instrument; that the said Alexander S. More attained his legal majority in the month of June, 1887; that prior thereto, and thereafter, the said Alexander S. More was of infirm health, and was physically and mentally diseased, so that when he became of age lawfully to contract debts and make agreements he was incapable of making lawful contracts by reason thereof; that the agreement and mortgage made to Isadore Dreyfus on the fifth day of November, 1887, was unlawful and void; that therein the said Alexander S. More was incapable of giving his consent thereto, by reason of said physical incapacity; that this plaintiff is informed and believes, and on that information and belief alleges, that said Alexander S. More, by reason of his physical and mental condition, and not having proper control of himself and capacity to act in a reasonable and proper manner, contracted habits of inebriety that further and seriously affected his mental condition, so that he became and was still further incapacitated to make any lawful agreement or execute any conveyance; that while in this condition

the said Alexander S. More executed and delivered to the said J. W. Calkins the said instrument of writing whereby the whole administration of his estate and affairs was transferred from himself to said Calkins; that therein the said Calkins induced said More to sanction and authorize the payment of sums of money, for which there was no consideration, to wit, not only all the expenses of the management of said estate by said Calkins, without supervision or control of said More, or of an authorized guardian, but also the payment of the ten thousand dollars hereinbefore referred to, which was without consideration and void, and by reason of the physical condition, induced by disease and confirmed and rapidly acquired habits of inebriety, the said Alexander S. More was, at the date of the execution of said instrument of writing, *non compos mentis,* and the said instrument of writing was void.

"And this plaintiff further alleges that since the beginning of this action the said Alexander S. More has departed this life, and that this plaintiff is the administrator of his estate, as heretofore set forth; that the said property so described in said instrument of writing is a part of the estate of said Alexander S. More, deceased, and that the plaintiff herein, as such administrator, is entitled to the possession and administration of said estate; that the debts named in and payments required to be made by the said instrument of writing were incurred during the incapacity of said Alexander S. More, and that great and irreparable damage will be done to the estate of said More if the said Calkins be allowed to proceed to sell said property under the provisions of said void instrument of writing.

"Wherefore the plaintiff demands judgment,—1. That the defendant render an account of the rents and profits of the said several tracts of land and the water rights appurtenant thereto received by the said defendant since the seventh day of April, 1888; 2. That the said sum

of ten thousand dollars described in said instrument as a non-interest bearing debt, due from the plaintiff to the defendant, be adjudged and decreed to be without consideration and void, and that the said defendant, his . agents and attorneys, be forever enjoined and restrained from collecting the same, or any part thereof; 3. That the said instrument in writing executed between the said A. S. More and defendant on the seventh day of April, 1888, be adjudged and decreed to be void and of no effect or virtue, in law or equity, and the said defendant be forever restrained and enjoined from selling or disposing of the said tracts of land and the water rights appurtenant thereto, or either or any of them, by virtue of the authority of said instrument executed as aforesaid between the said Alexander S. More and the defendant, and such other and further relief as the court may deem just and equitable in the premises, and for costs."

Exhibit A, annexed to the complaint, omitting the description of the lands and other property conveyed and assigned, is as follows:—

"Alexander S. More to J. W. Calkins.

"This indenture, made the seventh day of April, 1888, between Alexander S. More, of the city and county of Santa Barbara, state of California, the party of the first part, and J. W. Calkins, of said city, the party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of fifteen thousand dollars to him in hand paid, the receipt whereof is hereby acknowledged, and in consideration of the agreements and covenants herein entered into by the party of the second part, does by these presents grant, bargain, and convey unto the said party of the second part [here follows description of lands, water-ditches, and contracts].

"To have and to hold the aforesaid lands, rights, easements, contracts, claims, demands, and other property hereby conveyed, assigned, or transferred to the party of

the second part, his successor or successors and assigns, upon the trusts and confidences and subject to the powers hereinafter expressed, to wit:—

"The party of the second part is hereby empowered and authorized to sell and convey, assign and transfer, lease, mortgage, or hypothecate, any of the aforesaid lands, tenements, and hereditaments, water and ditch rights, and easements or other property hereby conveyed or assigned, or any part thereof or interest therein, and to sell and transfer or hypothecate the aforesaid contracts, or either of them, or any interest therein; and any sales of any of said lands, rights, easements, or other property may be made by the party of the second part at such price and upon such terms as to cash or on credit as he, the said party of the second part, may deem advisable. And the party of the second part is further empowered and authorized to institute and prosecute or defend such suits and actions or other proceedings at law as may be by him deemed advisable to protect or secure the rights and interests of the parties hereto, or either of them, in any of the lands or other property herein. described, and particularly the rights and interests of the party of the first part, in and to the waters of Sespe Creek and Fish Slough, and the water claims and ditch rights herein-above mentioned, and the party of the second part may compromise any of said suits, actions, or proceedings upon such terms as he may deem most advisable, and he may join the party of the first part as a party to any of said suits, actions, or proceedings, and the expenses of such suits, actions, or proceedings paid by the party of the second part shall be deemed a disbursement for the benefit of the party of the first part thereto, and the payment thereof, with ten per cent interest thereon from the time of disbursement, shall be deemed to be secured by these presents. The party of the second part and his successors shall, during the continuance of these trusts, have the sole possession, control, and management of all

the lands and other property, rights, and interests hereby conveyed and tranferred.

"And the said party of the second part shall (in the event that Isadore Dreyfus does not exercise his option to purchase the aforesaid property under said contract entered between him and the party of the first part the fifth day of November, 1887, and does not become the purchaser of the same) proceed with all diligence to sell, under the powers hereinabove expressed, the aforesaid lands, water rights, and other rights, easements, and other property, as a whole or in parcels, as he, the said party of the second part, or his successors in trust, may deem most advisable, and out of the proceeds of such sales, and the rents, issues, profits, and proceeds of said lands, contracts, and other property, the party of the second part, or his successor or successors in trust, shall pay,—1. The reasonable expenses of the management of said lands and property and of the execution of these trusts; 2. To the said J. W. Calkins the sum of fifteen thousand dollars, with interest thereon at the rate of ten per cent per annum, together with the additional sum of ten thousand dollars, which the party of the first part hereby agrees to pay the party of the second part, without interest, also the amount which may be paid out by the party of the second part in satisfaction of the mortgage executed to Isadore Dreyfus, and hereinafter mentioned; and the amount of money paid out in the course of the execution of these trusts and the powers hereby conferred, and for the payment of such taxes and other liens as may be levied on or be imposed upon any of the aforesaid property during the continuance of these trusts (except taxes and assessments upon this deed of trust, or the debts or other obligations hereby secured), with interest at the rate of ten per cent per annum upon all sums paid out as aforesaid (with the exception as to taxes and assessments above specified), and the residue, if any, of the proceeds of said lands, contracts, or other

property and other property and rights, shall be paid over to the said party of the first part, his personal representatives or assigns; and the residue of said lands remaining unsold shall, after the execution of these trusts, be reconveyed to said party of the first part, his heirs or assigns; and the residue of any other of said property, rights, claims, or interests then remaining in the hands of said party of the second part or his successors in trust shall be reassigned and transferred to the said party of the first part, his personal representatives or assigns. And the party of the second part agrees that in the event that said Isadore Dreyfus shall not exercise his option under the contract of November 5, 1887, above mentioned, to purchase the lands and property in said contract mentioned, and shall not become the purchaser of the same thereunder, he, the said party of the second part or his personal representatives will pay and discharge at its maturity that certain mortgage upon said lands executed by the party of the first part to Isadore Dreyfus the fifth day of November, 1887, and recorded in the office of the county recorder of said Ventura County, in book 9 of mortgages, page 613, together with the debt thereby secured, and that he will pay all taxes and assessments which may be levied upon said lands or other property during the continuance of these trusts, having the right to reimbursement for the same as hereinabove specified.

"In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

[SEAL.]                 "Alexander S. More.
[SEAL.]                 "J. W. Calkins."

Whether the instrument is merely a mortgage with power of sale, or a deed of trust conveying the legal title, I think the amended complaint states a cause of action for an accounting before a sale of the property by the defendant, and for a temporary injunction against the sale pending the accounting.

" Sales under powers in deeds of trust or mortgage are
a harsh mode of foreclosing the rights of the mortgagor.
They are scrutinized by courts with great care, and will
not be sustained unless conducted with all fairness, regu-
larity, and scrupulous integrity.   Upon very slight proof
of fraud or unfair conduct, or any departure from the
terms of the power, they will be set aside. . . . . A sale
ought not to be made when the debt is uncertain or in
dispute; and if made, it may be set aside." (Perry on
Trusts, 4th ed., sec. 602 x.)   "And if there is doubt or
dispute as to how much is due, or if the debt is unliqui-
dated, a sale will be enjoined.   The amount of the debts
must be certain; and if it is not so, the creditor must
file a bill to ascertain the amount, and pray for leave to
sell to pay the amount found due."   (Perry on Trusts,
sec. 802 ee.)

In Jones on Mortgages it is said: "When the accounts
between the parties are complicated, and the balance due
under the mortgage is uncertain, a sale may sometimes
be enjoined until the equities between the parties, which
should affect the amount due under the mortgage, are
settled and the balance due can be ascertained."   (Sec.
1813.)   The power of a court of equity over sales under
powers in mortgages and trust deeds is exemplified to a
considerable extent in the case of *Van Bergen* v. *Demarest*,
4 Johns. Ch. 37, wherein an injunction was granted at
suit of an infant heir of the mortgagor, on the ground
that the amount due was in dispute, and upon the hear-
ing the sale was subjected to the following restrictions:
1. That the amount due should be computed by a mas-
ter; 2. That the master be associated with the mort-
gagee in making sale; 3. That further notice of the sale
should be given; and 4. That only so much should be
sold as the master deemed sufficient, in case a part could
be sold without prejudice.   In *Cole* v. *Savage*, Clarke Ch.
361, a sale was enjoined on the ground that the mort-
gagee, in his notice of sale, claimed more than was due.

(See also *Draper* v. *Davis*, 104 U. S. 347; *Kornegay* v. *Spicer*, 76 N. C. 95; *Capehart* v. *Biggs*, 77 N. C. 261; *Bridgers* v. *Morris*, 90 N. C. 32; *Rossett* v. *Fisher*, 11 Gratt. 492; *Curry* v. *Hill*, 18 W. Va. 370; *Shultz* v. *Hansbrough*, 33 Gratt. 576; *Ashburn* v. *Andre*, 58 Miss. 609; *Dickerson* v. *Hays*, 26 Minn. 100; *Peck* v. *Peck*, 9 Yerg. 301; *Johnson* v. *Eason*, 3 Ired. Eq. 330; *Wilkins* v. *Gordon*, 10 Leigh, 547; *Sanford* v. *Flint*, 24 Mich. 28; *Marks* v. *Morris*, 2 Munf. 407; 5 Am. Dec. 481; Jones on Mortgages, secs. 1859, 1860.)

The complaint in this case shows that a considerable portion of the demand of defendant, for the payment of which he has advertised for sale all the property described in the instrument, is unliquidated and uncertain; and that ten thousand dollars of the liquidated portion of his claim is disputed by the plaintiff on the ground that it is unsupported by any consideration whatever. It also avers that the value of all the property greatly exceeds the amount of the just and lawful indebtedness of the plaintiff to the defendant. The fact that it appears upon the face of the instrument that payment for all loans and advances, and compensation for all services, with extraordinary interest, is provided for, exclusive of the promise to pay ten thousand dollars without interest, tends to corroborate the averment that there was no consideration for the promise to pay the ten thousand dollars. But for the presumption that there is a consideration for every promise in writing, there would appear to be no consideration for the promise to pay the ten thousand dollars without interest. But this presumption is disputable, and the plaintiff has disputed it in this case. In addition to this, the extraordinary and almost unlimited power granted by the instrument invites scrutiny as to the honesty and fairness of the transaction, and tends to induce a court of equity to restrict the execution of it to such mode as may do justice to the grantee with the least detriment or inconvenience to the grantor.

Upon the facts alleged, and appearing upon the face of the instrument exhibited, I think the court would have been justified in ordering an account to be taken of what was due the defendant, and in controlling the mode of sale, as to the notice to be given, the limitation of the amount and portions of the property to be sold, and whether or not it should be sold in parcels; and also, in ordering the sale to be made by its own commissioner, if deemed necessary to secure a fair sale for the highest obtainable price. Pending these proceedings, a sale by the defendant must necessarily have been enjoined.

2. I think the demurrer to the second cause of action attempted to be stated in the complaint, based upon sections 38 and 39 of the Civil Code, was properly sustained. That A. S. More was "entirely without understanding" is not directly or indirectly, definitely or indefinitely, stated in the complaint, and therefore the instrument executed by him was not void.

Conceding, for the purpose in hand, that it is stated in the second count that A. S. More was "of unsound mind," though "not entirely without understanding," yet it is not stated that the plaintiff or his intestate ever restored or offered to restore, paid or offered to pay, to defendant the money (fifty-eight thousand dollars) loaned to and paid for the plaintiff's intestate under the contract; nor is it stated that the plaintiff is ready or willing to restore anything of value received from defendant under the contract; therefore, upon the facts stated, the contract should not be rescinded. (Civ. Code, sec. 1691.)

I think the judgment should be reversed, and the cause remanded, with instruction to the court below to overrule the demurrer to the first count of the complaint.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with instructions to the court below to overrule the demurrer to the first count of the complaint.