[L. A. No. 506.  In Bank.—March 2, 1900.]

## ELIZABETH A. HODGKINS, Respondent, v. E. T. WRIGHT, Appellant.

Assumpsit—Defense—Conveyance of Real Property to Plaintiff—Payment—Security—Sale and Application of Proceeds.—It is a defense to an action of *assumpsit* for money paid for the use of the defendant at his request, that the defendant conveyed real property to the plaintiff either in payment of the debt, or by way of security, for the purpose and intention that the plaintiff should sell the property and apply the proceeds to the payment of the indebtedness, and that plaintiff has not exhausted the security.

Mortgages—Absolute Conveyances to Secure Debt—Contrary Stipulations Immaterial.—Conveyances, absolute in form, given in fact to secure the payment of a debt, are mortgages, subject to foreclosure and to the right of redemption, no matter how expressly the parties have stipulated that they shall not be so deemed, or that, in case of a failure to pay, the title of the mortgagee shall be absolute, and that no foreclosure need be had, and that the debtor does not intend to redeem.

Id.—Trust Deeds—Absence of Writing—Parol Evidence—Proof of Mortgage Security.—Conveyances absolute in form may be shown by evidence to be mortgages, but not to be trust deeds to secure indebtedness from the grantor to the grantee. Trusts in real estate, other than resulting trusts, can be created only by writing; and oral evidence that it was intended that the grantee should sell the property and give the grantor credit for the proceeds, does not establish an express trust, but indicates a mortgage security.

ID.—DOCTRINE AND EFFECT OF TRUST DEEDS—PERSONAL ACTION.—The doctrine of trust deeds to secure indebtedness will not be extended to deeds which are not expressly of that character. In effect, they are mortgages with power to sell, though not requiring foreclosure. It seems that one who has conveyances which are expressly trust deeds to secure indebtedness cannot bring a personal action until the security is exhausted.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

Graves, O'Melveny & Shankland, for Appellant.

M. W. Conkling, and J. W. Swanwick, for Respondent.

TEMPLE, J.—The action is for money laid out and expended for the benefit of defendant and at his request. The complaint contains two counts. The first is for three thousand and eight dollars and sixty-eight cents paid to the Farmers' and Merchants' Bank September 20, 1894, for the use of defendant. The second cause of action is for money paid by defendant to the First National Bank of Los Angeles for the use of plaintiff, between the first day of December, 1893, and the first day of July, 1894.

Several defenses were interposed, upon all of which there was much controversy, but I do not find it necessary to consider more than one. Plaintiff had judgment, and the defendant appeals from the judgment and from the order refusing a new trial.

Among the defenses interposed was one that the defendant had compromised, settled, and paid the demand of plaintiff; that she had accepted certain real estate from him in payment, and had surrendered to him all the evidences of indebtedness which she held. In a separate defense he averred that the demand of plaintiff was secured by mortgage upon certain real estate, to wit, upon the property which in the other defense it was averred had been conveyed to her, and which she had accepted in full satisfaction.

The case was tried with the assistance of a jury, which re-

turned a special as well as a general verdict. No findings were made.

Referring especially to the defenses mentioned, the jury found as follows:

"3. Were the transfers in evidence by defendant to plaintiff in September and October, 1893, followed by delivery of the notes formerly held by the banks, intended by the parties as a settlement of Mrs. Hodgkins' claims? A. No. . . . . .

"7. Were any deeds to real property given in September and October, 1893, by defendant to plaintiff intended as a mortgage or security for the indebtedness? A. No.

"8. Was the conveyance of the seven lots in North Cucamonga, mentioned in the evidence, made to Mrs. Hodgkins for the purpose and with the intention that she should sell such property and apply the proceeds, as far as the same would go, in payment of the defendant's indebtedness to her? A. Yes."

The answer to interrogatory 7 might in its nature be either a conclusion of law or a finding of an ultimate fact. Taken in connection with the answer to the succeeding question, it can only be deemed a conclusion of law, unless the jury merely intended to say that the parties did not intend that the conveyances should be deemed and treated as mortgages, which is really an immaterial matter. The question was whether they were given to secure the performance of an obligation—that is, to secure the payment of a debt. If they were given for that purpose they were mortgages, no matter how expressly the parties agreed that they should not be so deemed. They cannot, by agreeing to call or to consider an instrument which hypothecates real estate for the payment of a debt something other than a mortgage, avoid the necessity of foreclosure or deprive the debtor of his right to redeem. If in fact and in law the instrument is a mortgage, it does not matter that the parties intend and stipulate that it shall be something else, and that, in case of a failure to pay, the title of the mortgagee shall be absolute.

Some time before the conveyances in question were made, defendant had conveyed to plaintiff certain property as security and had taken from her written defeasances. Having afterward concluded to take the benefit of the Insolvent Act, de-

fendant submitted to plaintiff a list of his property and offered to convey to her anything she thought of value. Plaintiff knew of defendant's purpose and then selected certain lots which she asked to have conveyed to her. Certain property belonging to defendant was mortgaged to other parties. At plaintiff's request, such property was conveyed to the mortgagees each by deed absolute in form, and the said mortgagees gave a written agreement to plaintiff to the effect that she could redeem the property within a specified time. Defendant also reconveyed by deeds absolute on their face the property which had previously been conveyed to her. He also conveyed to her by similar deeds other real estate. There was no writing stating the purpose of these conveyances, and nothing seems to have been said upon the subject. At the request of the defendant, plaintiff delivered to him the notes which she had paid for him, and her counsel requested Wright to delay filing his petition in insolvency so that the conveyances would not be deemed a fraudulent preference. Wright did apply for his discharge and did not include plaintiff among his creditors.

Wright contends that the deeds were given and accepted in settlement and discharge of his indebtedness, but the court found otherwise. In another defense he contended that plaintiff's demand was secured by mortgage upon real estate, and therefore plaintiff ought not to be permitted to sustain this action.

The plaintiff testified that Mr. Wright told her he "would have to go through insolvency quite a long time before he did so," and she took certain conveyances from him. She also said, "Mr. Anderson has told me there was nothing to be gotten out of Mr. Wright, he did not think, because he didn't have anything." Mr. Wright, however, promised that she should lose nothing by him. She then testified as follows: "Q. Well, do you remember why these deeds were made? A. Made to secure me or get something out of the property if I could, that is what they were made for, because he had nothing else, he said." On rebuttal she said: "There was no arrangement made for Mr. Wright's redeeming the property. He said he was going into insolvency and could not expect to redeem it. He said he wanted to arrange it so as to save me the expense of foreclosure, and he did."

This corresponds quite closely, although not entirely, with the special verdict. The property was not turned over in payment or satisfaction, but to secure her so far as possible that she might get something out of Wright's property, but as Wright was insolvent and was about to apply for his discharge the right to redeem would be of no value to him, therefore he intended to fix it so that she would not need to foreclose. Either this was payment or it was a mortgage. Certainly, it was not intended that Mrs. Hodgkins should take the property and allow nothing for it.

Plaintiff's counsel argue that it was intended that Mrs. Hodgkins should sell the property and give Wright credit for what she was able to make out of it, and that this establishes that the deeds were deeds of trust. There was no evidence of an agreement that Mrs. Hodgkins should do anything of the kind, and there is no finding to that effect. Had there been such finding it would not have changed the result. The statute provides that a deed absolute on its face may be shown to be a mortgage. Trusts in real estate other than resulting trusts can be created only by writing.

Trust deeds, to secure payment of a debt, are an anomaly in our system, and are admittedly inconsistent with the policy of this state in regard to mortgages. It is at least doubtful if they would be now sustained but for a line of decisions made before they were very seriously questioned. In such case the doctrine will not be extended to deeds which are not expressly of that character.

It is not admitted that if the conveyances were expressly trust deeds, given to secure the indebtedness, plaintiff could bring a personal action before she had exhausted the security. It has only been held that such deeds are not mortgages which require foreclosure. In effect they are mortgages with power to sell. (*Sacramento Bank v. Alcorn,* 121 Cal. 379.)

It is admitted that plaintiff still holds some of the real property so conveyed to her. She cannot, therefore, maintain this action.

Judgment and order reversed.

Harrison, J., McFarland, J., Garoutte, J., Henshaw, J., and Beatty, C. J., concurred.

Rehearing denied.