[Civ. No. 222.   Third Appellate District.—July 18, 1906.]

# C. CURTIN et al., Respondents, v. L. W. KROHN et al., Appellants.

FORECLOSURE OF TRUST DEED BY BENEFICIARIES—ACCOUNTING INVOLVED. The rule that an action does not ordinarily lie in favor of a trustee to foreclose a trust deed does not apply where the granting clause of the instrument clearly shows that the conveyance was made as security only for existing and further indebtedness to plaintiffs, and the instrument included notes and mortgages made by third parties as additional security for the whole of the indebtedness, and provides for payment of assessments upon mining property and the application of its gross proceeds to the indebtedness, and the action necessarily involved an accounting and was not brought by the trustee, who refused to sell the property and might have been enjoined from so doing until an accounting should be had, but was properly brought by the beneficiaries against the trustors, trustees, and third parties to enforce their equitable rights by foreclosure and sale of the property involved.

ID.—JURISDICTION OF EQUITY—DETERMINATION OF WHOLE CONTROVERSY —SALE—DEFICIENCY JUDGMENT.—Equity will not permit litigation by piecemeal, but will take jurisdiction of the whole subject matter and determine the whole controversy when all the facts and parties are before it, and it may order a sale of the property involved, by its commissioner, and under the terms of the instrument, providing for payment of the indebtedness, can direct a judgment for any deficiency to be entered against the debtors.

ID.—FORMULA IN JUDGMENT—FORECLOSURE OF "EQUITY OF REDEMPTION"—SURPLUSAGE.—The mere insertion in the judgment in accordance with the prayer of the complaint of the formula that defendants "be barred and foreclosed of all equity of redemption" is surplusage, which does not vitiate the judgment and is not conclusive as to the nature of the action.

APPEAL from a judgment of the Superior Court of Madera County.   W. M. Conley, Judge.

The facts are stated in the opinion of the court.

Raleigh E. Rhodes, for Appellants.

G. J. Hely, for Respondents.

McLAUGHLIN, J.—The recitals in the complaint show that on June 3, 1898, the defendants L. W., W. J., H. A. and Louisa Krohn, were indebted to the plaintiffs in the sum of $7,000, and to secure the payment of the same, executed their promissory note to the defendant Commercial Bank of Madera, reciting therein that said bank was a trustee, and was to pay all moneys paid on the trust note, to the plaintiffs in certain designated proportions. At the same time and place the promisors executed an instrument denominated a trust deed, conveying certain realty, and notes secured by mortgage, to the said bank under conditions and for purposes therein specifically mentioned. In this instrument the Krohns are · designated parties of the first part, the bank, party of the second part, and plaintiffs, parties of the third part. It contains a succinct history of the circumstances under which the indebtedness of the Krohns to plaintiffs accrued, specifically fixes the sums due to each of the plaintiffs, and the proportion in which payments made on the note are to be distributed to them. It distinctly provides that the parties of the first part shall be and remain liable to the parties of the third part, until the latter are fully compensated for all money paid or advanced by them as sureties on the official bond of L. W. Krohn as tax collector of Madera county. In this connection it was agreed that the second party, *if possible,* would secure notes from other sureties on said bond, that the third parties would have an interest in any notes so obtained; and the collection thereof and application of payments made thereon is provided for in detail. The performance of assessment work on certain mines and the distribution of gross profits therefrom is also provided for. There was also an attempt to regulate the rights of one Kate A. Burke, who held a mortgage on a portion of the property but was not a party to the agreement. Provision was made for the reconveyance of the property in case of payment, for its sale and the execution of deeds in case of default, for the application of proceeds of any sale, and the return of any surplus to the parties of the first part. The *third parties* were specially authorized to pay, without notice, and according to their best judgment, all liens and encumbrances on the property, except taxes, and in their discretion to contest the payment of the same and prosecute and defend suits to protect the title to the prop-

erty. All payments and expenditures thus made were to be deemed secured by the instrument above mentioned. The granting clause in the instrument reads as follows: "That said parties of the first part, in consideration of the aforesaid indebtedness to the parties of the *third* part, and of one dollar to them in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, and *for the purpose of securing the payment of said promissory note, and of any sum or sums of money, with interest thereon, that may be paid or advanced by, or may otherwise be due to, the parties of the third part under the provisions of this instrument,* do by these presents grant, bargain, sell, convey and confirm unto the said party of the second part, and to its successors and assigns, the pieces and parcels of land situate in the county of Madera, State of California, described as follows, to wit."

The parties of the first part having failed to pay the whole or any part of the indebtedness evidenced by the note, according to the terms thereof, the plaintiffs, in writing, demanded that the trustee proceed to sell the premises as provided in the instrument in question, and the second party, in writing, expressly refused to comply with such demand. Thereupon this action was brought by plaintiffs against the first and second parties named in the instrument, and numerous other parties who claimed some interest in the premises. Many of the defendants failed to appear, and their default was duly entered, but L. W., W. J., H. A., J. J., F. W., Louisa, Dora, Theckla and John C. Krohn appeared, and by motion to strike out the allegations of the complaint and demurrer, raised the point that the court had no jurisdiction of the parties or of the subject matter of the action, and the further point that the complaint did not state facts sufficient to constitute a cause of action. The motion and demurrer were overruled and the court entered judgment, decreeing that the sum of $10,221.60 was due to plaintiffs upon the debt and deed of trust set forth in the complaint, and directing that the property described in said deed of trust be sold, and the proceeds be applied to the payment of the debt due to plaintiffs, and that a judgment for any deficiency be docketed against the parties of the first part named in said instrument. From the

judgment so entered, the Krohns, who appeared by motion and demurrer, appeal.

Appellants base their demand for reversal on the single ground that an action to foreclose a trust deed cannot be maintained. If it be conceded that *Kraft* v. *Bryan,* 140 Cal. 80, [73 Pac. 745], and *Koch* v. *Briggs,* 14 Cal. 256, [73 Am. Dec. 651], cited in support of this contention, go to the extent of holding that an action to foreclose a trust deed can never be maintained under any state of facts, still we think that these authorities and the legal principles upon which they rest, cannot be applied here.

To begin with, the instrument under consideration is something more than a trust deed. It defines the rights of the first and third parties in detail, and creates a distinct and continuing obligation on the part of the former to reimburse the latter for all sums expended as sureties on the official bond of L. W. Krohn or as a result of their suretyship. It allows the third parties to pay off liens and encumbrances, and defend or prosecute suits, to protect the title to the property, according to their own judgment, without consulting anybody or rendering any account of disbursements made in this behalf, to the trustee. The trustee obligated himself if possible to obtain notes, secured by mortgage, from other sureties, which notes, if obtained, were to be held in trust for plaintiffs, all payments thereon to be applied in payment of the trust note. The conveyance expressly included certain notes and mortgages held by the Krohns against various parties, and all payments made to the trustee thereon were likewise to be applied on the trust note. We cannot imagine how the rights and obligations of the respective parties to such an instrument could be ascertained, adjusted and conserved without resort to an action of some kind in some judicial form. Indeed, an accounting by the trustee and the third parties, for sums received by the former or expended by the latter, was indispensable, and a sale might have been enjoined until such accounting was had. (*More* v. *Calkins,* 85 Cal. 188, [24 Pac. 729].) The instrument on its face shows that doubt and uncertainty would exist in the absence of such an accounting, and that complications, involving the power of the trustee to sell the land, must result from its very terms, if notes and mortgages from the other sureties

were obtained and the amounts due on the various mortgages assigned by the instrument were paid or unpaid. Under these circumstances a proceeding in equity was necessary to a satisfactory adjustment of the matters involved. Waiving these considerations, however, this case cannot be classed or treated as an action to foreclose a trust deed. Such an action could only be brought by the *trustee,* while this action is brought by the *beneficiaries* against trustors, trustee and others. The trustee having refused to comply with the demand that he execute the trust, the beneficiaries were forced to appeal to a court of equity, and in doing so they, very properly, laid all of the facts before the court and asked for the "usual decree or such decree or order as the court may see fit to make." The court, under such circumstances, would, upon well-established principles, take jurisdiction of the whole subject matter of litigation, and also decree a sale of the real estate proper. (*Kraft* v. *De Forest,* 53 Cal. 659; 28 Am. & Eng. Ency. of Law, 839; 2 Washburn on Real Property, 523; Jones on Mortgages, sec. 1773.) Equity will not permit litigation by piecemeal, but will determine the whole controversy where all the facts and parties are before it. (*Watson* v. *Sutro,* 86 Cal. 529, [24 Pac. 172, 24 Pac. 64]; *Booker* v. *Aitkin,* 140 Cal. 473, [74 Pac. 11]; *More* v. *Calkins,* [85 Cal. 188, 24 Pac. 729].) The granting clause clearly shows that the conveyance was made as security only, and it is well settled in this state that trust deeds in the nature of a mortgage convey only a defeasible estate having none of the incidents of ownership except that the trustees are deemed to have such an estate as will enable them to convey. (*Sacramento Bank* v. *Alcorn,* 121 Cal. 383, [53 Pac. 813].) They are in effect mortgages with power to sell. (*Hodgkins* v. *Wright,* 127 Cal. 692, [60 Pac. 431]; Pomeroy's Equity Jurisprudence, 995.) Hence, there was no reason in law or logic why the court could not act directly, without forcing the *trustee* to sell and convey the premises. Under the circumstances the plaintiffs could maintain an action to have the accounts and respective rights of the parties adjusted and the property sold, and the court could order the sale to be made by its own commissioner. (*More* v. *Calkins,* 85 Cal. 190, [24 Pac. 729].) Under the terms of the instrument the court could direct a judgment for any deficiency to be entered in favor of the

plaintiffs against the four trustors, and its powers as a court of equity extended to a final adjustment of the rights of the parties to the end that further litigation might be avoided.

A trustee may always apply to a court of equity for aid or directions, and such courts are likewise open to any of the other parties when a dispute as to the existence, character, or terms of a trust arises. And where an accounting is necessary or a question as to the amount due exists, or where a doubt arises as to whether the instrument created a lien, is a mortgage or deed of trust, recourse to a court is the safest if not the only course to pursue. (*Banta* v. *Wise,* 135 Cal. 279, [67 Pac. 129]; *Godfrey* v. *Munroe,* 101 Cal. 227, [35 Pac. 761]; *More* v. *Calkins,* 85 Cal. 188, [24 Pac. 729].) "Trust deeds to secure payment of a debt, are an anomaly in our system, and are admittedly inconsistent with the policy of this state in regard to mortgages." This being the case, it would indeed be a harsh rule that would exclude any of the parties to such an instrument from the courts; hence, "It has only been held that such deeds are not mortgages which *require* foreclosure." (*Hodgkins* v. *Wright,* 127 Cal. 692, [60 Pac. 431].)

But if it be admitted that the rule absolutely forbids foreclosure of trust deeds, the mere use of the formula "barred and foreclosed of and from all equity of redemption," in the prayer of the complaint and judgment does not exclusively or otherwise establish the nature of the action nor impair the validity of the judgment. Such formula cannot injure any of the parties, and the rule "superfluity does not vitiate" must be applied. "The law regards form less than substance," and, looking at the substantial rights of the parties as disclosed by the instrument, and the subsequent conduct of the trustee, we think the judgment should be, and it is hereby, affirmed.

Buckles, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 14, 1906.