[Civ. No. 4202. First Appellate District, Division One.—July 3, 1922.]

GLADYS VICE, as Administratrix, etc., et al., Respondents, v. SADIE L. MORRIS, Appellant.

[1] DEEDS—ACTION TO SET ASIDE—INSANITY—PLEADING—SUFFICIENCY OF AMENDED COMPLAINT.—In an action to set aside deeds upon the ground of the insanity of the grantor, allegations in the amended complaint that for two years prior to the grantor's death he was physically unwell and mentally incompetent, that during all of said time he brooded over his physical condition and was possessed of many delusions, among which were that his wife was untrue to him, that she was endeavoring to acquire his property and deprive him thereof and that in the event of his death his son would not be taken care of by his wife and that if he left his property to his son it would be improperly managed, are sufficient in law to create an issue of insanity without a direct allegation that at the time of the execution of the deeds he was entirely without understanding.

[2] ID.—VERDICT SUPPORTED BY EVIDENCE.—In this action to set aside deeds on the ground that they were the product of insane delusions of the grantor regarding his family and property, the verdict in favor of the plaintiffs is supported by the evidence.

[3] ID. — INSANE DELUSIONS — INSTRUCTION. — A requested instruction that prejudices, dislikes, antipathies, however ill-founded, or however strongly entertained, cannot be claimed as insane delusions, nor is every delusion an insane delusion, was properly refused.

APPEAL from a judgment of the Superior Court of Napa County. E. I. Butler, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

C. C. Cowgill and Percy King, Jr., for Appellant.

Wallace Rutherford for Respondents.

KNIGHT, J., *pro tem.*—George B. Clifford executed two deeds, dated August 24, 1918, and November 7, 1918, re-

1. What are insane delusions and their effect on competency, note, 63 **Am. St. Rep.** 60.

Insane delusion with respect to relative as affecting testamentary capacity, notes, **Ann. Cas.** 1916C, 4, 29, 33, 35; **Ann. Cas.** 1918D, 471.

spectively, purporting to convey to the defendant, Sadie L. Morris, certain real property situate in Napa County. Clifford died on June 22, 1919. This action was commenced by his surviving wife, individually, and in the capacities of guardian of her son and executrix of Clifford's will, to set aside those deeds, upon the ground of the insanity of Clifford. The action was tried by the court sitting with a jury. A general verdict was rendered for the plaintiffs, and judgment entered accordingly. The defendant, Sadie L. Morris, has appealed.

Clifford, the grantor, and Grace L. Clifford, the plaintiff, were married on May 17, 1912, and there was born to them one child, Gerald B. Clifford, who, at the time of his father's death, was five years of age. Clifford and his wife lived unhappily, having separated on some five different occasions. Finally, on April 2, 1919, Mrs. Clifford, as the result of a divorce proceeding commenced by her, was granted an interlocutory judgment of divorce from Clifford, upon the ground of extreme cruelty, and was awarded the custody of the child.

Three grounds are urged by appellant for a reversal of the judgment, namely: that the amended complaint is fatally defective, insufficiency of the evidence to prove that Clifford was insane, and error in the instructions to the jury.

[1] Appellant claims that the amended complaint fails to state a cause of action because it contains no allegation that the grantor, at the time of the execution of the deeds, was "entirely without understanding." It should be stated, however, that appellant did not demur to the complaint, and, so far as the bill of exceptions discloses, did not make any objection whatever to the admissibility of any part of the proof upon that or any other ground. It may therefore be assumed that the case was tried, by the defendant, upon the theory that the amended complaint was good.

However, as stated by appellant, if the amended complaint wholly fails to state a cause of action, this point may be raised, even for the first time, on appeal, and we have therefore proceeded to examine the points made by appellant against the sufficiency of the amended complaint.

It is alleged that for two years prior to Clifford's death he was "physically unwell and mentally incompetent; that during all of said time he brooded over his physical condi-

tion, and was possessed of many delusions." Among the delusions alleged are that his wife was untrue to him; that she was endeavoring to acquire his property and deprive him thereof; that in the event of his death his son would not be taken care of by his wife and that if he left his property to his son it would be improperly managed; that his wife and her family were endeavoring to poison him, in order to acquire his property. It is further alleged that "while acting under said insane delusions herein above mentioned and while so mentally incompetent," etc., said deeds were executed.

The above allegations, we believe, are sufficient in law to create an issue of insanity and also to sustain the judgment as rendered if those allegations have found support in the evidence.

In the *Estate of Redfield,* 116 Cal. 637 [48 Pac. 794], it is said: "It is commonly held that aside from those cases of dementia where the patient has not mental power to form any conceptions whether true or false, of the relations of things, the true test of insanity is mental delusion; that if a person persistently believes supposed facts which have no real existence, and against all evidence and probability conducts himself upon the assumption of their existence, he is as to that belief under a morbid delusion, and delusion in that sense is insanity."

While in the Redfield case, *supra,* the delusions alleged and proved were held to be insufficient to invalidate the will because they related to subjects foreign to the testamentary act, yet it may be taken as the law of that case that, if insane delusions do relate to the persons or objects affected by the testamentary act, or if they relate to the kindred or property of the testator, or to the disposition of his property, they may be held sufficient to invalidate the testamentary act.

Here the amended complaint, in effect, alleges that the deeds in question were the product of insane delusions, and it is obvious, we think, from the nature and character of the delusions alleged, relating as they do to the family and property of the grantor, that, if proved, they had a direct bearing upon the very matters and things concerning which the grantor, in the disposal of his property, should have had a sane and rational mind.

Under such circumstances it was not essential, in our opinion, that there should have been a direct allegation that the grantor was "entirely without understanding."

We do not consider any of the cases cited and relied upon by appellant (*More* v. *Calkins,* 85 Cal. 177 [24 Pac. 729]; *Castro* v. *Geil,* 110 Cal. 292 [52 Am. St. Rep. 84, 42 Pac. 804]; *Jacks* v. *Estee,* 139 Cal. 509 [73 Pac. 247], and *Mc-Neese* v. *McNeese,* 37 Cal. App. Dec. 452) in point, for the reason that in none of them was the question of delusionary insanity involved. The distinction drawn between the two classes of cases is made apparent in *Crowther* v. *Rowland-son,* 27 Cal. 377.

[2] The evidence on the issue of insanity admittedly presents a conflict, and, therefore, if the verdict of the jury finds any substantial support in the evidence, the judgment based thereon will not be reversed. (*Estate of Ross,* 179 Cal. 630 [178 Pac. 510].)

The proof offered by plaintiffs on the question of insanity extended beyond the limits of the particular delusions alleged in the complaint and tended to show general insanity. It appears from the testimony of Mrs. Clifford that Clifford's mind began to fail at the time of the birth of the child, and from that time on he seemed to grow gradually more excited and irrational. She related many incidents which occurred during their married life, which, it is claimed, tended to show insanity. In this she was corroborated by the testimony of her mother and sister. Some of those incidents were as follows: During the infancy of their child it became necessary to have a minor operation performed upon it, and Clifford, with no apparent reason, became enraged, went out of doors, cursing the baby because it was born, packed up his things, and went away for a month; if the baby cried he would rush into the house in a frenzy and charge his wife with attempting to kill it; that when he got angry he would tremble, his face would turn an "ashy" color, he would pull his hair, grit his teeth, and distort his face; that he quarreled incessantly with his wife about the household affairs, including the care of the baby and its clothes, during which he would violently curse her; that on three different occasions he took a frying-pan away from her in which she was frying meat and threw it into the ash-can; that he would go for periods of time without speak-

ing to her and never wanted to see anybody else; that he would accuse her of "doping" his food and refused to eat it; that he would very often throw away his food; that he would become angry over things which happened many years before and would throw things from the table into the sink; that he refused to eat food which her mother had sent to her because he said that it was poisoned and demanded that she taste it first; and if he did not feel well he would charge her with having made him sick and trying to get rid of him, for the purpose of trying to get his property; that on various occasions he would become enraged without any reason and would pace up and down the floor and yell; that he said he would never leave anything to his boy for the reason that her folks would get it; and if he did leave property to his son it would be improperly managed.

It was further testified to by other members of the family that he would make all manner of disturbance so that the baby could not sleep; that he would slam doors, talk as loud as he could, and walk up and down the floor; that he would "throw his lips back and show his teeth like an angry dog."

A witness named Reeves testified that at times Clifford was irrational and that he (Clifford) believed that his food was being poisoned. The notary public before whom the deeds were acknowledged testified that when Clifford acknowledged the deeds he acted in a very peculiar manner, as if he were laboring under a severe strain and did not know what he was trying to do. Four other witnesses, who were old acquaintances of Clifford, testified as to his irrationality and in support of their opinions stated, among other things, that they had noticed a marked change in his mental condition; that he seemed to be much bothered in mind; that he failed in his physical and mental condition during the last year of his life.

While all of the testimony given in support of plaintiffs' case has not, for the sake of brevity, been narrated, we believe that the foregoing statement of the evidence is sufficient to show that the verdict of the jury is amply supported.

Appellant's final point concerns the instructions to the jury. In this respect it is contended that the instructions given on the question of insanity omitted the element contended for by appellant, namely, that in order "to avoid a

deed on the ground of insanity the grantor must be 'entirely without understanding.' " This is substantially the same objection that was urged against the sufficiency of the amended complaint, and which, as we have already pointed out, is without merit. We therefore do not deem it necessary to repeat the discussion.

We have examined the court's charge to the jury, and, in our opinion, the law was not only correctly stated therein, but the charge was sufficiently comprehensive to cover all of the legal points involved, including the necessary mental qualifications required by law for a person to execute a valid deed or will.

[3] The only other specific complaint made in the appellant's brief about the instructions is that the court refused to give the following instruction proposed by the appellant: "Prejudices, dislikes, antipathies, however ill-founded, or however strongly entertained, cannot be claimed as insane delusions, nor is every delusion an insane delusion."

This is merely an excerpt from the opinion in the *Estate of Kendrick*, 130 Cal. 360 [62 Pac. 605], and it omits the two sentences following said excerpt, which are essential to its meaning and understanding. In the form proposed the instruction was properly refused.

Judgment affirmed.

Kerrigan, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.