[Civ. No. 698. Third Appellate District.—May 23, 1910.]

OSCAR J. BROADDUS, Administrator, etc., et al., Appellants, v. MELVIN MONROE JAMES et al., Respondents.

ACTION TO SET ASIDE DEED BY AGED WIDOW—ALLEGED INCAPACITY—WANT OF CONSIDERATION OR INDEPENDENT ADVICE—TRUST RELATION—SUPPORT OF FINDINGS.—In an action to set aside a deed made by an aged widow to her surviving daughter to the exclusion of children of a deceased daughter for alleged incapacity, want of consideration or independent advice, and breach of a trust relation, where the court found against all of the allegations of the complaint, and in favor of the grantee, it is apparent that if the evidence is sufficient to sustain the findings that the grantor fully understood the nature of the transaction, and that the conveyance was the effect of her untrammeled and voluntary act, the questions as to consideration and independent advice become unimportant.

ID.—RIGHT OF OWNER TO DISPOSE OF PROPERTY.—Every owner has an incontrovertible right, in the absence of fraud, to dispose of his own property according to his volition.

ID.—CONFLICTING EVIDENCE AS TO WANT OF CAPACITY OF GRANTOR.—Where the evidence for the plaintiffs addressed to the alleged want of capacity of the grantor was in substantial conflict with that for the respondents, which supports the findings made that the grantor thoroughly understood the nature and consequences of her deed, the findings as made on that question cannot be disturbed by this court.

ID.—SUPPORT OF FINDING AS TO VOLUNTARY DEED.—The finding is fully supported as to the voluntary character of the transfer by deed by the widow to her daughter. The testimony of the defendants and of three other witnesses who were present at the execution of the deed justifies the conclusion of the court that the grantor was free

from undue or any improper influence of the grantee or any other person.

ID.—AFFECTION BETWEEN MOTHER AND DAUGHTER—MINISTRATION OF DAUGHTER—DECLARATION OF GRANTOR.—The evident affection that existed between the mother and daughter, the kindly and continued ministration of the latter to the comfort and happiness of the former, and the declaration of the grantor as to her reason for making the deed that "Mary Ann was good and kind to her, and she didn't know how she could have got along without her, and she wanted her to have what property she had; she had deserved it all," all tended to rebut any unfavorable inference against the grantee.

ID.—REASONABLENESS OF DEED.—Upon the abundantly supported theory of the uniform kindness of the daughter toward the mother, and in view of the fact that it had continued through many years, and that she was the only living child, the conveyance is easily explicable, and seems entirely reasonable.

ID.—PRESUMPTION FROM RELATION BETWEEN PARENT AND CHILD—EVIDENCE NEGATIVING UNDUE INFLUENCE.—The showing made by the evidence was sufficient to overcome any possible presumption of undue influence growing out of any confidential relation between the parties as aged parent and child. There was no other relation between them than that of care of the child for the parent. The daughter had no power of attorney and transacted no business for the mother.

ID.—RELATION OF PARENT AND CHILD NOT INVALIDATING DEED OF PARENT.—The mere relation of parent and child is not sufficient to invalidate a deed from the parent to the child. It is merely a circumstance, inviting careful consideration of the transaction; but before it can justify the inference of undue influence, there must be superadded imposition, fraud, importunity, or something of that nature. Cases arising between an aged parent and child can turn only upon the exercise of actual undue influence, and not upon any presumption of invalidity. A gift from a parent to a child certainly cannot be presumed invalid.

ID.—INDEPENDENT ADVICE AND CONSIDERATION—QUESTIONS FOR TRIAL COURT.—Though the questions of independent advice and consideration are not essential to the validity of the transaction, when the deed was fully understood and voluntary, yet they are important elements to be considered by the trial court in determining the status of the property. Though the notary summoned by her was not an independent adviser in the legal sense, yet he first took her free statement of what she wished to do with the property, and when he prepared the deed accordingly, fully made her acquainted with its contents before she executed it. The evidence as to con-

sideration, though meager, is sufficient to support the finding of the court on that question.

ID.—SERVICES RENDERED BY DAUGHTER TO PARENT—PRESUMPTION OF GRATUITY NOT CONCLUSIVE—BURDEN OF PROOF.—Though services rendered by a child to the parent are presumed to be gratuitous, yet such presumption is not conclusive. The burden is on the party rendering the services to overcome such presumption, and the proof is sufficient to overcome it and support the finding of consideration for the deed.

ID.—DECLARATIONS OF TESTATOR SHOWING VALUE OF SERVICES.—The declaration of the testator showing the value of the services rendered to her by her daughter, and that she deserved the whole of the property which she proposed to deed to her, would undoubtedly be admissible against her if she were alive and contesting the deed, and they were equally admissible against her representatives, and in favor of the representatives of the deceased grantee, as being the best evidence obtainable on the question of consideration. Its weight was for the trial court.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

McNab & Hirsch, and D. W. Burchard, for Appellants.

Mannon & Mannon, for Respondents.

BURNETT, J.—The facts may be stated substantially in the language of appellants, as follows: Mary F. Broaddus died intestate in October, 1906. At the time of her death she had been a widow for more than thirty years. Two children, both daughters, were born to her during coverture. One of these, Jane, died in 1885 and the other, Mary Ann, in 1906. The sons and only heirs of the daughter Mary Ann are defendants and respondents and the descendants and heirs of the other daughter are plaintiffs and appellants herein. Prior to the death of the daughter, Jane, the mother had broken up housekeeping, divided her household effects between the two families, spent part of her time with one and part of the time with the other daughter until Jane's death, when she went to live with Mary Ann and remained there until the latter's death, as aforesaid, in 1906. On Octo-

ber 27, 1904, and for a long time prior thereto, the said Mary F. Broaddus was the owner and seised in fee of a certain tract of land in Mendocino county of the value of about $7,000, and it is claimed that at the time of her death she was the equitable owner and entitled to the possession of the same, and that plaintiffs, by right of inheritance, succeeded to an undivided one-half thereof.

On said 27th of October, the said Mary F. Broaddus made a deed of this property to her said daughter, Mary Ann James, thereby divesting herself of all her possessions except a pension which expired at her death.

As stated by appellants: "The purpose of this action is to set aside the deed so made, on the grounds that Mary F. Broaddus, at the date thereof and for a long time prior thereto, was of unsound mind, incapable of transacting business, of understanding or appreciating any business or of managing her property, and was insane, and on the further ground that said transfer was improvident, without sufficient or any consideration and was a mere gift and was made without independent or any counsel or advice of any character whatever, to one occupying a position of trust and extreme confidence."

The judgment was in favor of defendants, and from this and the order denying a motion for a new trial the appeal was taken.

The court found: "That the deed was, on the twenty-seventh day of October, 1904, signed, executed, acknowledged and delivered by the said Mary F. Broaddus to the said Mary A. James freely and voluntarily and with full knowledge and understanding on the part of the said Mary F. Broaddus of the contents of said instrument, of what she was doing and of its results to herself and all her relatives and of its nature, operation and legal effect; that said Mary F. Broaddus received a good and valuable consideration from the said Mary A. James for the execution of said deed and for the lands and premises conveyed thereby." There is also a finding that no undue influence was exerted, that no advantage was taken of the grantor, Mary F. Broaddus, and that she "had full, free and independent advice and information concerning the execution of said deed and of its effects upon herself, her property and all her relatives."

Appellants rely for a reversal of the judgment principally upon the ground that the evidence is insufficient as a matter of law to support these various findings of the trial court.

It must be apparent, however, that if the evidence is sufficient to support the conclusion that the grantor fully understood the nature of the transaction and that the conveyance was the effect of her untrammeled and voluntary act, the questions as to consideration and independent advice become unimportant. This follows from the incontrovertible right of everyone, in the absence of fraud, to dispose of his own property according to his volition. The first inquiry suggested, then, is, Can a rational conclusion be drawn from the evidence that the grantor had sufficient understanding to appreciate the nature of the transaction and to realize the significance of the conveyance?

Appellants dwell with persuasive skill upon the mental and physical infirmities of the grantor detailed by various witnesses, and it is confidently asserted that she was afflicted with senile dementia to that extent that she could not comprehend the nature or consequences of the deed in question. Among other circumstances related, attention is called to the following: For twenty years prior to the execution of the deed she had been stone blind. She went to bed one night able to see and awoke in the morning with her eyesight gone forever. Thereafter she rapidly declined, both mentally and physically, and she manifested less and less interest in things about her. She was a cripple and had walked with crutches and cane for nearly twenty years or more prior to that date. She was addicted to the use of tobacco from early years, she was tremulous with extreme age and so emaciated that she resembled a mummy. Her hearing had become bad progressively, and when the notary attempted to read portions of the deed to her he had to sit down alongside her and talk in a loud voice directly in her ear. Physically she was so weak and decrepit that for ten years or more she could not move without assistance, and had to be clothed and fed by her daughter. Conversation in her later years had to be carried on through Mary Ann and at last she took no notice of what went on around her. In later years her relatives seemed lost to her memory, although they had been before the objects of her affectionate regard. Whenever she attempted to speak

during these later years she could not carry on a connected conversation, her sentences would halt midway, and it was impossible to secure rational or intelligent answers. In later years, she suffered a sunstroke, after which she more rapidly declined. It seemed as if she was merely being kept alive to celebrate her one hundredth birthday. Witnesses also testified that, in their opinion, at the time of the execution of the deed, she was irrational and of unsound mind.

But when we turn to the witnesses for respondents we find an entirely different story. It is not claimed, indeed, that she had survived unscathed the ravages of time, but, viewing the testimony as the law requires of us, it is impossible to avoid the conclusion that the court below was justified in finding that she thoroughly understood the nature and consequences of her act. Mrs. Parker Hall testified: "I had known Grandma Broaddus at that time about twenty-five years, I guess. I can't exactly tell how often I had seen her during that twenty-five years, but as often as convenient would visit. When she would be sick I would always go and see her, visit her. I was a friend of Grandma Broaddus, and visited at her house as I visited at the houses of other friends in Willits. In my opinion Grandma Broaddus on the twenty-seventh day of October, 1904, was sane. At all times when I talked with Grandma Broaddus I had no difficulty in talking to her. Her answers to my questions were always intelligent." Nine other disinterested and four interested witnesses testified to the same effect. They related conversations with her and gave reasons for their opinion that she was entirely of sound mind. One of these disinterested witnesses who had known Mrs. Broaddus since 1864 and had visited her frequently declared that she "never met the old lady when she could detect anything wrong with her mind." As to the circumstances immediately surrounding the execution of the deed, the three subscribing witnesses testified that it was fully explained to her at the time it was executed. The conclusion from their testimony is irresistible that she understood the nature and effect of the deed. Furthermore, as indicative of her knowledge of the significance of said transaction, there is the testimony of three witnesses to her subsequent declaration that the grantee owned the property.

It may be admitted that the case is a peculiar one. The great age of the grantor renders it somewhat unprecedented. No case has been cited and probably none can be found where, as here, the action was to set aside a deed executed by a person lacking only a few days of being one hundred years of age. Still, it cannot be said that the testimony of the witnesses as to her mental condition is inherently improbable. This court cannot say, in the face of the evidence to the contrary, that her extreme age had so impaired her mental faculties as to render her incapable of conveying her property. If allusion were to be made to common knowledge or to historical examples, we would find many illustrations in extreme old age of the truth of Cicero's statement that "occasionally the mind seems to stand out of reach of the body's decay." The instances are, of course, rare, but at least one case in an adjoining county is familiar to many where an individual still lives, having passed the century milestone, whose acquaintances would not hesitate to pronounce of sufficient mentality to execute a valid conveyance. Mitchnikoff, in his work on "The Prolongation of Life," declares that women live to much greater ages than men, but yet, among the former, it is the rarest chance to find a centenarian. He mentions, however, the case of one Mme. Robineau, with whom he became acquainted, who lived in a suburb of Paris and had reached the age of one hundred and six. The physical condition of this woman, he declares, showed extreme decay, but notwithstanding her physical weakness, Mme. Robineau "retained her intelligence fully, her mind remained delicate and refined, and the goodness of her heart was touching. Her conversation was intelligent, connected and logical." He proceeds to state that "at the age of one hundred and six her intelligence suddenly became weak. She lost her memory almost completely and sometimes wandered." He concludes with the assertion that "The facts that I have brought together justify the conclusion that human beings who reach extreme old age may preserve their mental qualities notwithstanding serious physical decay." In this connection he calls attention to the fact that "philosophers such as Plato, poets such as Goethe and Victor Hugo, artists such as Michael Angelo, Titian and Franz Hals produced some of

their most important works when they had passed the age of seventy-five.''

The position of respondents in relation to the voluntary character of the transfer is equally impregnable. The testimony of the defendants and of the three witnesses, who were present at the execution of the deed, justifies the conclusion of the court that the grantor was free from undue or any improper influence of the grantee or any other person. The evident affection that existed between mother and daughter, the kindly and continued ministration of the latter to the comfort and happiness of the former, and the declaration of the grantor as to her reason for making the deed are all significant circumstances tending to rebut any unfavorable inference against the grantee. As clearly indicative that she was following her unaided inclination and volition, we find, according to the testimony, the old lady declaring: ''Mary Ann was good and kind to her and she didn't know how she could have got along without her, and she said she wanted her to have what property she had. She had deserved it all.'' Upon the theory of the uniform kindness of said Mary Ann to her mother, which finds abundant support, and in view of the fact that her attentions had continued for so many years, and that she was the only living child, the conveyance is easily explicable, and seems entirely reasonable. While her considerate and tender care of her mother was no more than required by filial duty, yet the great infirmities of the aged woman, while rendering the duty no less imperious, imposed an onerous burden and responsibility, and the acceptance and acquittance of this duty with cheerful and persistent zeal deserve unstinted commendation and generous reward. This seems to have been recognized and appreciated by Mrs. Broaddus.

It is, moreover, the contention of appellants that the evidence disclosed a confidential relation between the parties to the deed of such a nature that the presumption would follow that the deed was the result of the undue influence of the grantee, which could not be overcome except by her testimony. As the grantee was not living at the time of the trial, this view would manifestly require a reversal of the lower court's finding. But conceding, for the sake of the argument,

the existence of said relation and presumption, they cannot have the operation and effect claimed by appellants.

In *Hemenway* v. *Abbott*, 8 Cal. App. 450, [97 Pac. 190], a somewhat similar contention was made, but it is therein held that it was not necessary for the grantee to take the stand, the court saying: "It would doubtless have been more satisfactory had she made a full explanation of her relations with Proctor, but it cannot be said, as matter of law, that her failure to testify destroyed the probative force of the evidence submitted in the case in her behalf."

A fairer statement, however, of plaintiffs' position probably is that in view of the said relation and presumption the evidence, in the absence of any testimony from the grantee, is insufficient to show that no undue influence was exerted. However, we feel satisfied that the showing was sufficient to overcome any adverse presumption that may have existed in the premises. Again, the court was justified in the view that no such presumption should be indulged. As pointed out by respondents: "Mrs. James did not transact any business for her mother. She held no power of attorney and did not manage the property. According to the testimony of Albert James, the old ladies gave him joint direction concerning the leasing of the ranch," it being conceded that Mrs. James owned a part of it in her own right. The mere relation of parent and child is not sufficient to invalidate a deed from the former to the latter. It is a circumstance, of course, inviting careful consideration to the transaction, but before it can justify the inference of undue influence there must be added, imposition, fraud, importunity or something of that kind. It is so expressed in Pomeroy's Equity Jurisprudence, 962, and *Mackall* v. *Mackall*, 135 U. S. 167, [10 Sup. Ct. Rep. 705], cited by respondents. In the former it is said: "Where the positions of the two parties are reversed where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conveying benefits upon the child may be set aside. Cases of this kind plainly turn upon the exercise of actual undue influence and not upon any presumption of invalidity. A gift from parent to child is certainly not presumed to be invalid."

In the Mackall case, *supra,* it is said by the court, through Mr. Justice Brewer, that: "Right or wrong, it is to be expected that a parent will favor the child who stands by him, and give to him, rather than the others, his property. To defeat a conveyance under these circumstances, something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity, duress or something of that nature must appear; otherwise, that disposition of property which accords with the natural inclinations of the human heart must be sustained."

The cases cited by appellants in which the presumption is said to exist involve a different state of facts from what we are now considering.

The character of *Brown* v. *Burbank,* 64 Cal. 99, [27 Pac. 940], is clearly shown by this statement in the opinion: "The plaintiff, while still an inexperienced girl, still under the care and control of her grandparents, still subject to the influence acquired by them in the double relation of parent and guardian of her person and estate, accustomed to consult their wishes and obey their commands, ignorant of her rights, purposely misled and kept in ignorance by those to whom she naturally looked for the protection of her interests, without the aid of legal advice or time for reflection, made a conveyance of her whole estate without any valuable consideration to one standing *in loco parentis.*" It is well said, "that a deed obtained under such circumstances cannot be permitted to stand is one of the clearest of propositions."

While, in *Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689], it is declared that the relation between husband and wife is confidential, it was held that the plaintiff was induced to make the deed by the confidence which he had in his wife, and that the betrayal of such confidence was constructively fraudulent. For this reason, and also upon the ground that there was actual fraud, the transaction was construed as creating a trust. This case is reviewed in *Tillaux* v. *Tillaux,* 115 Cal. 673, [47 Pac. 691], wherein it is said: "By the foregoing authorities and others not here collated, the principle is clearly declared that the marriage relation does not, *ipso facto,* raise the presumption that a deed of conveyance from the husband to the wife has been the re-

sult of undue influence; but such deed, *prima facie,* conveys
to the wife whatever, according to rules of conveyancing, its
terms embrace. We have discussed the subject at some length,
because an expression or two in one or two former opinions
give some faint color, scarcely visible, to a different doctrine.
Appellant contends that there are facts at bar which, viewed
in the light of the marriage relation, are sufficient to make
the deed in question invalid; and the case of *Brison* v. *Brison,*
90 Cal. 323, [27 Pac. 186], and also 75 Cal. 525, [7 Am. St.
Rep. 189, 17 Pac. 689], is cited in support of the contention.
The facts in that case were very peculiar and presented an
instance of a wife violating an express promise made by her
to a husband, upon which he had the right to implicitly rely,
not only on account of the legal confidential relation between
them, but also on account of the actual confidence which he
had in her, as the relation between them had always been
most affectionate and confiding.'' It is apparent, of course,
that the same result would follow in any case where actual
confidence existed and there was a wrongful violation of that
confidence.

The decision in *Ross* v. *Conway,* 92 Cal. 632, [28 Pac. 785],
rested upon evidence that there was actual undue influence
exercised by the spiritual adviser of one who was of weak
mind and in a dying condition. It is undoubtedly true, as
therein declared, ''that the influence which the spiritual ad-
viser of one who is about to die has over such person is one
of the most powerful that can be exercised upon the human
mind, especially if such mind is impaired by physical weak-
ness, is so consonant with human experience as to need no
more than its statement; and in any transaction between them
wherein the adviser receives any advantage, a court of equity
will not enter into an investigation of the extent to which
such influence has been exercised.''

In *O'Dell* v. *Moss,* 130 Cal. 352, [62 Pac. 555], it is held
that the relationship of brother and sister is not of itself
fiduciary, ''but it is a material circumstance in determining
whether, as a matter of fact, a fiduciary relation existed be-
tween them, which is more easily superinduced by reason of
the blood relationship; and where it appears that special trust
and confidence is reposed by one of them in the other, the
one who occupies the superior position has the duties and re-

sponsibilities of a trustee, with the attendant consequences of the trust relation."

The case of *De Arellanes* v. *Arellanes*, 151 Cal. 443, [90 Pac. 1059], was an action to set aside a deed from a mother to her son, and it was held that the transfer was valid where it was made "freely and voluntarily in the execution of a purpose conceived by her to so dispose of the property, without the exercise of any fraud on the part of the son, and with full understanding on her part of all the facts and the effect of such a transfer." Therein the rule announced in *Soberanes* v. *Soberanes*, 97 Cal. 140, [31 Pac. 910], is quoted with approval, wherein it is said: "When the parent is of great age, or is enfeebled by disease, and conveys his entire estate to one child, to the exclusion of other children dependent upon his bounty, the burden is unquestionably upon the donee to show that the gift was made freely and voluntarily, and with full knowledge of all the facts and with perfect understanding of the effect of the transfer." Granting that this is a correct exposition of the rule, the burden, as we have already seen, was sufficiently met by respondents.

In *Nobles* v. *Hutton*, 7 Cal. App. 14, [93 Pac. 289], the judgment of the lower court was affirmed, which was based upon findings and sufficient evidence to the effect that "when the deed was executed, the plaintiff was old, infirm, of failing memory and of unsound mind, and by reason thereof incapacitated from attending to business and defendant took advantage of such incapacity and procured her to sign and acknowledge the deed without consideration; that the plaintiff was without independent advice, and that defendant by taking advantage of plaintiff's mental weakness, and by the use of undue influence arising out of the relationship between them of mother and son and of principal and agent induced plaintiff to execute the deed."

Aside from the foregoing, appellants are mistaken, we think, in the view they take of the elements of independent advice and of the consideration for the transfer.

They are not essential, as we have seen, to the validity of the transaction, but they are important elements to be regarded by the trial court. Under some circumstances, they might be decisive of the controversy, but here they were simply an important part of the evidence the weight and effect

of which were committed to the judgment and conscience of the trial judge in the determination of the status of the property.

While there is no direct evidence that the notary who prepared the deed *advised* the grantor, as that term is generally understood, yet it does appear that she told the witness, Mrs. Cook, that she wanted to make a deed of her property to her daughter, and asked the witness to see Mr. Baechtel and have him come to the house. It is true that Mrs. James saw the notary first and informed him of her mother's desire. Mr. Baechtel, in pursuance of the request, visited Mrs. Broaddus to ascertain what she wanted, and she then told him that she wanted to deed the property to her daughter. He then went to his office, prepared the deed as requested and the same evening returned with it to Mrs. Broaddus. He informed Mrs. James that two witnesses would be required as her mother was blind. They were summoned and Mr. Baechtel read the deed over to Mrs. Broaddus, explained it and satisfied himself that she thoroughly understood it. Among other questions, he asked her if she understood that she was deeding her property to her daughter, and she said she did. Not very much was said, but, according to the witnesses, the notary was careful in the performance of his duty, and it seems difficult to understand how anything more could have been expected of him. The declarations of the grantor show that she needed no particular advice or information in the premises, and for the notary to have undertaken to tell her what she already understood about the effect of the deed would have been entirely gratuitous and rather impertinent. The circumstance as to independent advice is to be regarded as bearing upon the question whether the deed is the voluntary act of the grantor, and it is not so significant, as contended by appellants, that a deed made "without the benefit of full, free and independent advice and counsel from a competent lawyer of her own selection will not be allowed to stand."

It is deemed unnecessary to review the cases cited as to this point, but the rule in this state does not require, as declared in the case of *Soberanes* v. *Soberanes,* 97 Cal. 146, [30 Pac. 912], that "the donor acted upon independent advice in transactions between parent and child, when it appears that

the gift was made freely, voluntarily and with full under-
standing of all the facts and the effect of the transfer.''

As to the consideration, while the evidence is somewhat
meager, we cannot say it is insufficient to support the finding.
It is conceded by respondents that if the services were ren-
dered by Mrs. James without expectation of reward or agree-
ment therefor, they must be considered as gratuitous, and, in
the absence of evidence, such would be the presumption, but
it is insisted—and to this we assent—that the presumption
is not conclusive, but may be and has been rebutted ''by
showing circumstances which will support the implication
that the services were to be paid for.'' The rule is so stated
in the American and English Encyclopedia of Law, volume
18, page 1085, with citation of authorities. It is added that
''The burden is, of course, on the person rendering the ser-
vices to overcome the presumption which the law raises that
such services were rendered gratuitously.'' Among the cases
so holding is *Finch* v. *Green,* 225 Ill. 304, [80 N. E. 318],
where a son and his wife cared for his aged father for over
twenty years, and, in discussing the question of considera-
tion, the supreme court of Illinois, after stating the general
rule that ''there can be a recovery only by proving the mak-
ing of an express contract or circumstances from which a
reasonable inference would arise that such a contract was in
fact made,'' the court further says: ''The evidence shows that
David Finch recognized to the fullest extent a moral obliga-
tion on his part to pay for the valuable and unusual personal
services rendered to him; but there is no evidence that prior
to the making of the will there was an express contract to
pay for them. . . . The evidence, however, justifies an infer-
ence of an express contract between the parties when the will
was made, or certainly at the time of the execution of the
deed. The deed was executed in the presence of appellant
and his wife, and it is clear that it was made in considera-
tion of the services rendered and to be rendered, and the care
and trouble which the grantor had caused to his son and wife.
The services were of such a nature that they could scarcely
be measured in money, and it was entirely competent for
David Finch to place such a value upon them as he saw fit.''

The declarations of the grantor as to her reasons for ex-
ecuting the deed would undoubtedly be admissible against her

if she were alive and contesting the deed, and they are equally admissible against her representatives. (Code Civ. Proc., sec. 1853; *Donnelly* v. *Rees,* 141 Cal. 56, [75 Pac. 433] ; *Stoddard* v. *Newhall,* 1 Cal. App. 111, [81 Pac. 666].)

Such testimony may not be altogether satisfactory, but it was the best that could be obtained, since the grantor and grantee were dead, and its weight was for the trial court.

We have considered all the points made in the full and able briefs of appellants, but we can see no reason to interfere with the conclusion of the court below, and the judgment and order denying the motion for a new trial are affirmed.

Hart, J., and Chipman, P. J., concurred.