[Civ. No. 4204.   First Appellate District, Division One.—June 19, 1922.]

LILLIE M. WALKER et al., Appellants, v. A. L. SMITH et al., Respondents.

[1] DEEDS — GRANT FROM MOTHER TO SON — ACTION TO SET ASIDE — FRAUD—UNDUE INFLUENCE—EVIDENCE.—In this action brought to have declared fraudulent and void a deed executed by plaintiffs' aged mother, a widow, to one of her sons, to the exclusion of the other children, the circumstances surrounding the execution of the deed were not such as to show fraud or undue influence, or that the grantor did not understand the transaction.

[2] ID.—CONFIDENTIAL RELATIONS—UNDUE INFLUENCE—PRESUMPTION— BURDEN OF PROOF—EVIDENCE.—One who holds a confidential relation toward another may not take advantage of that relation for his own benefit, or deal with the other on terms of his own making, and any transaction with the other by which he benefits will be presumed to have resulted from an undue exercise of the influence arising from the existence of such relationship; and in this action to set aside a deed executed by plaintiffs' mother to one of her sons, who, alone, of all her children, remained with her and took care of her in her declining years, the burden of proving that the deed was not the result of any undue influence over his mother was met by defendant.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge. Affirmed.

The facts are stated in the opinion of the court.

Olin L. Berry for Appellants.

W. D. L. Held and Keith C. Eversole for Respondents.

KERRIGAN, J.—This is an action brought by certain of the heirs of Ana J. Smith, deceased, to have declared fraudulent and void a deed made by said Ana J. Smith to her son A. L. Smith. A. L. Smith is the principal defendant; the rest of the defendants are heirs of the deceased who refused to join as plaintiffs in the action. From a judgment in favor of the defendants the plaintiffs appeal.

The property over which this controversy arose consists of 160 acres situate in the county of Mendocino. Prior to

March 9, 1902, Thomas Smith and Ana J. Smith, the parents of the parties to this action, resided on the property. Thomas Smith died on said date, leaving a will in which he devised to his daughters, Lillie M. Walker, Daisy C. Farley, Maggie J. Cobb, and his grandson Ernest L. Simpson, share and share alike, said land, reserving a life estate therein for Ana J. Smith, his wife, and providing a small cash bequest for the remaining children. The will was admitted to probate, and Ana J. Smith became vested with the title to the property, the probate court setting the same aside to her as a homestead. After the death of Thomas Smith all of the children, with the exception of A. L. Smith, married and left the ranch. A. L. Smith remained at home and took care of his mother, who was getting well along in years and unable to do any work, and also carried on the ranch. He remained with his mother practically all the time.

On March 29, 1913, Ana J. Smith executed a deed in favor of A. L. Smith, which deed was recorded on April 2, 1913. Ana J. Smith died intestate December 13, 1915, and this action was filed March 18, 1918, to set aside the deed.

The circumstances surrounding the execution of the deed upon which the appellants rely to sustain their cause of action are with regard principally to certain certificates signed by the notary and the witnesses at the time of the execution of the deed and attached to it, and a declaration of the grantor incorporated in the deed. Said declaration is to the following effect: "The grantor herein does hereby state and represent that in the execution of this deed she has had the independent advice of persons not interested therein, and that the execution and delivery of this deed is the result of her own volition, and that she understands the effect and result of her act in so doing, and understands fully that her execution and delivery thereof is irrevocable; that she has read this deed; that she is of sound mind and memory, and in this transaction she is not acting under any duress or influence of any kind whatever. By the acceptance hereof the grantee assumes the payment of the promissory note secured by mortgage recorded in book 67 of Mtgs. page 175." The certificate of the notary was in the ordinary form, but with the following addition: "At said time I did, without the presence of the grantee

therein named and prior to the execution of this instrument give to said grantor the benefit of a full, free and private preliminary conference, and did then and there fully explain to her the effect and result of the execution and delivery of said deed; that at said time the grantor was of sound mind and memory and not acting under the influence of any person whatever, but was acting solely of her own volition and fully understood the nature, effect and result of her act, and under such circumstances and at such time she did sign said deed and acknowledge the same before me as Notary Public.'' A certificate of two witnesses to substantially the same effect as the certificate of the notary was appended to the deed.

It is the claim of the appellants that the very fact that these certificates were used, and the grantor's said declaration incorporated in the deed, affords a strong inference that the mental condition of the grantor was such as to raise a suspicion concerning her understanding of the transaction.

The testimony of A. L. Smith indicated that up to a few months before the deed was made he had no idea of becoming the owner of the ranch, and that the idea was finally brought home to him by his sister Mary E. Tracey. The ranch was evidently very dear to Ana J. Smith, for the record indicates that after returning to the ranch from a visit to one of her daughters in San Francisco in 1912 she did not again care to leave it.

It may be well at this point to examine briefly into the home life of the family and the intelligence of Ana J. Smith.

Mrs. Smith was educated during the early years of her life in the Spanish language. After coming to California she entered Notre Dame College, in San Jose, where she received further education for a year or so. Later she married Thomas Smith, and from about the year 1858— being at that time about twenty-three years of age—lived in Mendocino County upon the ranch here in question. There she lived her life and raised her family—five girls and two boys. Of this large family but one remained with the mother in her declining years—A. L. Smith. The record is vague as to the particular time the mother became too feeble and ill to do any work around the house, but

suffice it to say that for a number of years prior to her death she was unable to do any work whatsoever. According to the statement of Daisy Farley, she was in 1912 so physically weak that she was unable to go to church and return without becoming exhausted; and later on she was subject to sinking spells immediately after eating. This witness and other of the plaintiffs told of certain delusions under which Ana J. Smith labored. Such being the case we must of necessity take into consideration the effect of all this on a man having the responsibility and charge of the old lady, and in addition the burden of carrying on the ranch. It appears that in 1912 and 1913 the condition of Mrs. Smith was such that on account of her rheumatism it was necessary for her son A. L. Smith to wash her face, comb her hair, do the cooking and washing for both, the chores around the place, the housekeeping, and in addition put in a crop. We have heretofore shown that Mrs. Smith was a woman of intelligence, educated in her native language, and possessing that extensive and practical experience and wisdom to be derived from raising a family of seven children. Even though it appeared that physically she was in a bad way, still, as plaintiff Farley testified, her mind was in a pretty good condition, excepting she would get alarmed at night. It is at this time that we first find the thought taking root in the mind of Mrs. Smith of deeding the property to her son A. L. Smith. Coming home from a visit to her daughter Mrs. Farley, in San Francisco, in company with her niece Emily Tracey, she informed Emily that she intended to leave everything to A. L. Smith, giving as her reason that she was disgusted with the way she had been treated while away from home, and that she knew that with Louis (A. L. Smith) she would be perfectly happy the rest of her life. Whether the trip to San Francisco caused this attitude we do not know, but coming at this time it seems significant, especially in view of the fact that, according to the testimony of Mary Tracey, another daughter, the visit with Mrs. Farley was not entirely harmonious. However that may be, the fact remains that Mrs. Smith left her daughter Mrs. Farley and finished her visit to San Francisco with another daughter, Mrs. Tracey, returning to the ranch in June, 1912, accompanied by the latter's

daughter. We find a further expression of Mrs. Smith concerning her intention regarding the disposition of her ranch in February of the following year. It appears that Mary E. Tracey was at the ranch on a visit, and during a conversation with her mother, learned that she was kindly disposed toward Louis, stating that he was so kind and considerate, and she wanted to leave the place to him; that she had lived there so long, and that he never urged her to sell as did the others. Mrs. Tracey, although one of the heirs, told her mother at that time that she would not object to such a course, and communicated the conversation to her brother Louis. He at first said that he did not wish to have the property, but later stated that it would be agreeable to him to receive it, and he spoke to his mother on the subject. She said it would be all right. Smith was a notary, but evidently wishing to prevent any taint attaching to the transaction, wrote to his attorney at the county seat, explained the circumstances, and shortly thereafter the deed with the certificates hereinbefore described were sent to him by said attorney ready for execution. Arrangements were made for two witnesses, neighbors, and for a notary, and on the 29th of May, 1913, the deed was executed, the grantee not being present at the time. So far there appears to have been a substantial compliance with the terms of the certificates: the notary read the deed in the presence of Mrs. Smith and the witnesses, and in this connection A. L. Smith likewise testified that he also read the deed to his mother. The deed being signed by Mrs. Smith, the notary took her acknowledgment, and the witnesses signed the prepared certificates. The only contrary evidence appears from the witness Hathaway, who, after two or three statements that he insisted on knowing what the document was before he signed, testified that he asked Mrs. Smith if she wanted them to sign the document, and that she answered "Yes." He also claimed that no one read the deed to her or told her what it was, which is contrary to the testimony of the notary and the other witness. We can only infer that the testimony of Hathaway was disbelieved by the trial court. The record shows that he was very evasive in many of his answers, and, moreover, his reputation for veracity was directly impeached by character witnesses.

[1] The principal contention of the appellants is that the grantor in the execution of the deed had no independent advice nor opportunity therefor, this claim being based upon the fact that, although the certificates recited that independent advice was given, still the effect of the execution of the document was not explained, which, it is argued, strengthens the suspicion attaching to the preparation and use of these certificates, and tends to show that the grantor did not understand the transaction, or was under undue influence.

Taking all the facts into consideration, we are of the opinion that the circumstances surrounding the execution of the deed were not such as to show fraud or undue influence; and as to the use of the certificates, they were prepared by an attorney, to whom the task of drawing the conveyance was intrusted, with the idea of inviting the particular attention of all parties concerned to the nature of the transaction as being between a woman of advanced age and a son who was to benefit thereby. The deed was read to the grantor, and undoubtedly those present at the time gave to the certificates all the attention which they thought they required. The attorney who drew the certificates was not present, and as a consequence the performance of the conditions which he was disposed to insist upon may not have been as thorough as desired; but, as before stated, a review of the circumstances shows a substantial compliance with their terms. Of course, as a matter of law they were entirely superfluous. There was no attempt made by either of the parties to the deed to keep its execution a secret, and it was in fact soon known to some of the relatives, as of course immediately to the two witnesses and the notary. It was recorded a few days after its execution. There is also evidence to the effect that at least one of the plaintiffs knew of the deed, and it was testified by A. L. Smith that he was informed by that person that an attempt would be made to set it aside.

[2] Appellants make the further contention that, the grantee being a son, a confidential relation existed between the parties to the deed, throwing the burden upon him to prove that its execution was entirely free from undue influence. They cite numerous cases to sustain the theory that one who holds a confidential relation toward an-

other may not take advantage of that relation for his own
benefit, or deal with the other on terms of his own making,
and that any transaction with the other by which he bene-
fits will be presumed to have resulted from an undue exer-
cise of the influence arising from the existence of such re-
lationship.

The rule relied upon by the appellants as laid down in
the cases cited must be conceded and is well established.
For the purpose of this case, then, we must concede that
the burden was on the defendant A. L. Smith to show that
the deed was not the result of his undue influence over his
mother, and thus overcome the presumption of undue in-
fluence cast upon such a transaction by the provisions of
section 2235 of the Civil Code.

The case of *Broaddus* v. *James,* 13 Cal. App. 464 [110
Pac. 158], is precisely applicable to the facts of this case.
Except that the property was deeded to a daughter, and
that the parties seeking to set aside the deed were children
of the grantee's sister instead of sisters and brothers, the
case is on all-fours with the instant case. In that case
the grantor lacked but a few days of being one hundred
years of age, and according to the evidence was less in-
telligent than Ana J. Smith. She was also hard of hearing,
infirm, stone blind, and a cripple. It would seem that in
the Broaddus case the validity of the deed was more doubt-
ful than here. However, the following language in that
case applies to this case: ''The position of respondents in
relation to the voluntary character of the transfer is equally
impregnable. The testimony of the defendants and of the
three witnesses, who were present at the execution of the
deed, justifies the conclusion of the court that the grantor
was free from undue or any improper influence of the gran-
tee or any other person. The evident affection that existed
between mother and daughter, the kindly and continued
ministration of the latter to the comfort and happiness of
the former, and the declaration of the grantor as to her
reason for making the deed are all significant circumstances
tending to rebut any unfavorable inference against the
grantee. As clearly indicative that she was following her
own unaided inclination and volition we find, according to
the testimony, the old lady declaring: 'Mary Ann was good
and kind to her and she didn't know how she could have

got along without her, and she said she wanted her to have what property she had. She had deserved it all.' Upon the theory of the uniform kindness of said Mary Ann to her mother, which finds abundant support, and in view of the fact that her attentions had continued for so many years, and that she was the only living child, the conveyance is easily explicable and seems entirely reasonable. While her considerate and tender care of her mother was no more than required by filial duty, yet the great infirmities of the aged woman, while rendering the duty no less imperative, imposed an onerous burden and responsibility, and the acceptance and acquittance of this duty with cheerful and persistent zeal deserve unstinted commendation and generous reward.''

As was noted in the case cited, so here, the disposition made by Ana J. Smith in favor of her son was the natural and proper reward of years of service and devotion to an aged and infirm mother, a burden cheerfully assumed and patiently borne, with little, if any, co-operation on the part of his brothers and sisters, whose natural obligation to their aged and all but helpless parent was as great as his. It would, indeed, have been a matter of surprise if Mrs. Smith had not made precisely the disposition of her property that she did.

Speaking of the presumption of undue influence the court in the same case said: ''It is a circumstance, of course, inviting careful consideration to the transaction, but before it can justify the inference of undue influence there must be added imposition, fraud, importunity or something of that kind. . . . Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity. A gift from parent to child is certainly not presumed to be invalid'' (13 Cal. App. 472 [110 Pac. 161]).

In the same opinion the court also uses this language: ''It must be apparent, however, that if the evidence is sufficient to support the conclusion that the grantor fully understood the nature of the transaction, and that the conveyance was the effect of her untrammeled and voluntary act, the questions as to consideration and independent advice became unimportant. This follows from the incontrovertible right of everyone, in the absence of fraud, to dispose of his own property according to his volition. The

first inquiry suggested, then, is, Can a rational conclusion be drawn from the evidence that the grantor had sufficient understanding to appreciate the nature of the transaction and to realize the significance of the conveyance?" (13 Cal. App. 468 [110 Pac. 159].)

The court in the case at bar found that the deed was executed for a good and valuable consideration; that the same was neither void nor fraudulently procured; that Ana J. Smith executed the deed of her own volition, and had the independent advice of persons not interested therein, and she then and there fully understood that the execution and delivery thereof was irrevocable, and she realized that she was conveying the property to A. L. Smith.

Considerable testimony was adduced as to the unsoundness of mind of the grantor, several witnesses reciting certain traits and delusions which it was alleged she had. Other than the testimony of the plaintiffs there was no evidence of these traits and delusions; while, on the other hand, a number of witnesses, neighbors, and relatives testified that she had no such traits or delusions. We see no reason, therefore, to interfere with the finding of the court that at the time of the execution of the deed Ana J. Smith was of sound mind and memory, and not acting under duress or influence of any kind whatever.

Taking into consideration the circumstances surrounding the home life of Ana J. Smith, and the further fact that there is nothing to indicate a frame of mind to deed the property otherwise than it was actually deeded, and drawing the inference—as was said in *Mackall* v. *Mackall*, 135 U. S. 167 [34 L. Ed. 84, 10 Sup. Ct. Rep. 705, see, also, Rose's U. S. Notes]—that "Right or wrong, it is to be expected that a parent will favor the child who stands by him, and give to him rather than the others his property," it would seem only natural, as already indicated, that A. L. Smith would be the favored child.

We are clearly of the opinion that the finding of the trial court is amply supported by the evidence, and we see no reason to interfere with the conclusion reached.

The judgment is affirmed.

Tyler, P. J., and Knight, J., *pro tem.*, concurred.